ROGERS, C. J., concurring.
 

 I agree with the defendant, Brandon Montrell Bellamy, that this court's marked expansion of the doctrine of implied waiver of claims of jury instructional error in
 
 State
 
 v.
 
 Kitchens
 
 ,
 
 299 Conn. 447
 
 ,
 
 10 A.3d 942
 
 (2011), was mistaken and, therefore, I would overrule that decision and return to the much narrower conception of implied waiver that previously governed our jurisprudence in this area. Application of a more restrictive implied waiver rule leads me to conclude that the defendant's claim of instructional error is reviewable on its merits pursuant to
 
 State
 
 v.
 
 Golding
 
 ,
 
 213 Conn. 233
 
 , 239-40,
 
 567 A.2d 823
 
 (1989).
 
 [1]
 
 Nevertheless, the defendant's claim fails under
 
 Golding
 
 because it does not raise a claim of constitutional error.
 
 [2]
 

 It is well established that "
 
 Golding
 
 [review] is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial-after it is too late for the trial court or the opposing party to address the claim-would encourage trial by ambuscade, which is unfair to both
 the trial court and the opposing party. ... Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial.
 
 Golding
 
 strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and
 the appellate tribunal will review it, but only if the trial court record is adequate for appellate review." (Internal quotation marks omitted.)
 
 Moye
 
 v.
 
 Commissioner of Correction
 
 ,
 
 316 Conn. 779
 
 , 784-85,
 
 114 A.3d 925
 
 (2015). Upon reflection, I believe that
 
 Kitchens
 
 improperly upset the balance struck by
 
 Golding
 
 for a substantial category of cases, those raising jury instructional error, and did so for questionable reasons. Returning to a narrower implied waiver rule would support the goals of
 
 Golding
 
 yet prevent the abuse of the leniency it affords.
 

 In
 
 Kitchens
 
 , this court announced the following general rule to determine whether a claim of jury instructional error will be deemed to have been waived by trial counsel and, therefore, unreviewable on appeal: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case."
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 482-83,
 
 10 A.3d 942
 
 . The court explained that the foregoing rule rests on an "inference, or 'assumption' of fact"; (emphasis omitted)
 

 id.,
 
 at 487 n.25,
 
 10 A.3d 942
 
 ; that counsel was aware of the defect later raised on appeal and decided not to assert it at trial, and, therefore, that a waiver could be found without evidence that counsel actually knew of the defect. Id., at 483,
 
 10 A.3d 942
 
 . In that sense, we acknowledged, the implied waiver rule depended on a "legal fiction."
 
 Id.,
 
 at 487 n.25,
 
 10 A.3d 942
 
 .
 

 Upon further consideration, I am convinced that the inference upon which the
 
 Kitchens
 
 rule relied was an unreasonably broad one, and that the circumstances described in
 
 Kitchens
 
 more accurately reflect, in the majority of instances, a forfeiture of the right to claim a specific error in the instructions rather than a waiver of that right.
 
 [3]
 
 See
 
 State
 
 v.
 
 Davis
 
 ,
 
 311 Conn. 468
 
 , 495-503,
 
 88 A.3d 445
 
 (2014) (
 
 Palmer, J.
 
 , concurring). As a result,
 
 Kitchens
 
 effectively has carved out a particular category of unpreserved trial error and deemed it unworthy of review pursuant to
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 239-40
 
 ,
 
 567 A.2d 823
 
 . While
 
 Golding
 
 permits appellate consideration of any other type of unpreserved constitutional claim,
 
 Kitchens
 
 revokes the right to such review by invoking the unrealistic assumption that defendants, through their counsel, knowingly and purposefully have relinquished that right in the described circumstances.
 
 [4]
 
 In
 my
 view, the benefits of this approach do not outweigh the costs, either to defendants with meritorious claims of harmful instructional error, to the court system or to society as a whole.
 

 In
 
 Kitchens
 
 , we relied on a number of additional factors in support of an expansive implied waiver rule, among them the remaining availability of habeas review. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 496-98,
 
 10 A.3d 942
 
 . Upon further reflection, I now realize that, to a defendant with a meritorious constitutional claim, habeas review is not an effective and equivalent substitute for direct appellate review. First, because of the delay attendant to filing a habeas petition, receiving a full hearing and awaiting a decision thereon, a party who ultimately prevails in that forum likely will have spent years of his or her life incarcerated for a conviction that was constitutionally infirm. It is no answer that these cases are relatively few. Second, unlike a direct appeal decided pursuant to
 
 Golding
 
 , a habeas appeal presents an inhospitable framework for novel constitutional claims or those that require the overruling of established authority in order to succeed. Compare
 
 In re Yasiel R.
 
 ,
 
 317 Conn. 773
 
 , 780-81,
 
 120 A.3d 1188
 
 (2015) (party may prevail under third prong of
 
 Golding
 
 even in absence of existing, binding precedent supporting his or her constitutional claim), with
 
 Ledbetter
 
 v.
 
 Commissioner of Correction
 
 ,
 
 275 Conn. 451
 
 , 461-62,
 
 880 A.2d 160
 
 (2005) ("numerous state and federal courts have concluded that counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance" and citing cases),
 
 [5]
 
 cert. denied sub
 nom.
 
 Ledbetter
 
 v.
 
 Lantz
 
 ,
 
 546 U.S. 1187
 
 ,
 
 126 S.Ct. 1368
 
 ,
 
 164 L.Ed.2d 77
 
 (2006).
 
 [6]
 
 The unavailability of
 
 Golding
 
 review for a particular category of unpreserved constitutional claims does not just harm individual defendants who might have raised those claims on direct appeal. It also has costs for society as a whole, by decreasing and/or delaying the availability of appellate jurisprudence, primarily concerning the criminal law. In addition to correction of trial error for the benefit of individual defendants, appellate review serves the societal function of articulating, developing and refining the common law. R. Calhoun,
 "Waiver of the Right to Appeal,"
 
 23 Hastings Const. L.Q. 127
 
 , 172 (1995). "Historically, courts of appeal have been relied upon to announce, clarify and harmonize the rules of decision employed by the legal system in which they serve. ... This is a concern that extends far beyond an individual defendant's desire for access to corrective process." (Footnotes omitted; internal quotation marks omitted.)
 
 Id.
 
 As we have recognized in our jurisprudence governing vacatur, judicial decisions are not merely for the litigants, but are "valuable to the legal community as a whole." (Internal quotation marks omitted.)
 
 State
 
 v.
 
 Boyle
 
 ,
 
 287 Conn. 478
 
 , 489,
 
 949 A.2d 460
 
 (2008). Notably, when this court or the Appellate Court analyzes a claim under
 
 Golding
 
 , it contributes to the development of the law regardless of whether the claim succeeds and results in relief for the defendant.
 

 Another purpose of appeals is to legitimize state decision making. "In other words, appeals are an essential part of the overall procedural structure which operates to assure us that the system is a fair one. It is essential that the system not only be fair but that it be perceived as fair." R. Calhoun, supra,
 
 23 Hastings Const. L.Q. 178
 
 . The right to appeal "assures the public, rightly or wrongly, that trial court decisions will be reviewed for accuracy and fairness and adds an aura of probity to the criminal justice process."
 
 Id.
 
 In my view, addressing a constitutional issue substantively when the record is adequate to do so, rather than deeming it unreviewable, adds considerably to this endeavor.
 

 Further, I am not convinced that the benefits of the
 
 Kitchens
 
 rule outweigh these costs. In particular, I question whether the intended efficiencies truly will be achieved. Although the rule has reduced the number of direct appeals addressing claims of jury instructional error substantively, it has spawned an entirely new area of jurisprudence addressing whether the requirements
 for a waiver have been met.
 
 [7]
 
 Moreover, when claims are deemed waived under
 
 Kitchens
 
 , they are not necessarily disposed of with finality. Rather, at least some, and perhaps many, merely will be deferred, only to be raised anew in a habeas action.
 
 [8]
 
 Furthermore, the habeas forum is less efficient than a direct appeal in that a trial must be held, at which counsel must explain his or her reasons for
 failing to object to the instruction at issue, perhaps with yet another appeal to follow. As the majority acknowledges, "a finding of waiver [in a direct appeal] opens the door to a future habeas proceeding on which the state and the court will be required to expend additional limited resources that could have been devoted to other pending trials." Given these circumstances, I am inclined to conclude that disposing of an unpreserved claim of instructional error at the earliest opportunity, on its merits pursuant to
 
 Golding
 
 , is the most efficient approach.
 

 For the foregoing reasons, I believe that this court should abandon the
 
 Kitchens
 
 experiment of broadly denying direct appellate review of unpreserved constitutional claims of jury instructional error and, instead, return to the much narrower conception of implied waiver in this area that predated
 
 Kitchens
 
 . Under pre-
 
 Kitchens
 
 implied waiver jurisprudence, a waiver was not deemed to have occurred by application of any preconceived general rule, but rather, was determined more flexibly on a case-by-case basis in view of all the relevant facts and circumstances. Claims of instructional error that were not identified at trial were deemed
 waived by defense counsel's approval of the charge
 
 [9]
 
 only when,
 
 at the very least
 
 , there was specific, on-the-record discussion of
 
 the particular instruction
 
 later claimed to be defective on appeal, and defense counsel, thereafter, explicitly assented to that instruction.
 
 [10]
 
 Stated otherwise, the record demonstrated that counsel was focused on the specific instruction later claimed to be erroneous, thought about it, and then indicated to the trial court that he or she had no issue with that instruction.
 
 [11]
 
 Again, an assessment of waiver is dependent on all of the circumstances surrounding this on-the-record discussion of the instruction at issue, and counsel's agreement thereto, but at a very minimum, a focused discussion and agreement must have occurred.
 
 [12]
 
 This approach more closely resembles that generally taken in the federal courts,
 
 [13]
 
 which also permit
 appellate review of forfeited claims but deny it to waived claims.
 
 [14]
 
 Although
 even a narrower implied waiver rule rests on an inference, rather than actual proof, that counsel consciously decided to abandon a known claim, it is a much more reasonable inference
 
 [15]
 
 and, I believe, one that appropriately accounts for the varying interests of defendants, the state, courts and society at large.
 
 [16]
 
 Applying the narrower, pre-
 
 Kitchens
 
 analysis to the facts of this case leads me to conclude that the defendant's instructional claim was not waived and, therefore, should be reviewed pursuant to
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 239-40
 
 ,
 
 567 A.2d 823
 
 . The defendant's claim is that the trial court's instruction on identification was improper, because it did not include certain factors that a jury should consider when determining whether a particular identification is reliable. The record indicates that, following the trial court's distribution of written copies of its proposed charges, the court held an in-chambers, off-the-record charging conference with counsel. Thereafter, on the record, the trial court described certain changes to the instructions that it would be making. The trial court mentioned in particular that its proposed charge included an identification instruction that included some factors to be considered, without any elaboration as to those factors, then it stated that it would be adding language to the effect that it was the state's burden to show that the defendant was the person who had committed the crime.
 
 [17]
 
 There was no on-the-record discussion between the trial court
 and counsel concerning the identification instruction. After describing one other instruction, the trial court asked counsel whether they had any further exceptions, and both counsel stated that they did not.
 

 Under these circumstances, I would not find a waiver of the defendant's instructional claim. First, there is no copy of the trial court's proposed instructions in the record. Furthermore, although the record suggests that the trial court and counsel discussed the identification instruction in chambers, the extent of that discussion and defense counsel's participation therein is not apparent. Finally, there is no substantive, on-the-record discussion of the instruction to evidence defense counsel's focus thereon. Rather, the trial court's description of the instruction, to which counsel
 thereafter simply agreed, is quite general. In my view, this is not enough to infer waiver.
 

 Although I believe that the defendant's request for
 
 Golding
 
 review of his claim should not be foreclosed due to waiver, I nevertheless conclude that the claim necessarily fails for another reason. Specifically, because the claim is instructional and not constitutional in nature; see footnote 2 of this concurring opinion; it cannot prevail under the second prong of
 
 Golding
 
 . Accordingly, I would affirm the judgment of the Appellate Court based on different reasoning. See
 
 Small
 
 v.
 
 Commissioner of Correction
 
 ,
 
 286 Conn. 707
 
 , 709,
 
 946 A.2d 1203
 
 (2008).
 

 For the foregoing reasons, I respectfully concur.
 

 PALMER, J., with whom McDONALD, J., joins, concurring in the judgment.
 

 In
 
 State
 
 v.
 
 Kitchens
 
 ,
 
 299 Conn. 447
 
 ,
 
 10 A.3d 942
 
 (2011), a narrow majority of this court concluded that, when a trial court has afforded defense counsel a meaningful opportunity to review its proposed jury instructions, and when, in the course of
 an on-the-record charging conference, defense counsel agrees with or simply acquiesces in
 
 [1]
 
 those instructions, an appellate court will not later review an unpreserved claim that the instructions violated the constitutional rights of the defendant. See id., at 482-83,
 
 10 A.3d 942
 
 . The stated rationale for carving out this unique exception to
 
 Golding
 

 [2]
 
 review was that a defense counsel who acquiesces in the proposed instructions may be deemed to have implicitly or impliedly waived, on behalf of the defendant, any objections thereto. See id., at 483,
 
 10 A.3d 942
 
 .
 

 Constrained by centuries of precedent, the majority in
 
 Kitchens
 
 was forced to acknowledge that a person executes a waiver only when he intentionally and voluntarily chooses to relinquish a known right. Id., at 469,
 
 10 A.3d 942
 
 . This same standard applies regardless of whether the waiver is implied (by conduct) or express (verbal), and, indeed, the state bears an especially high burden of proof when seeking to establish that a criminal defendant has waived by implication one of his fundamental constitutional rights. See part I B of this opinion. In seeking to justify its new rule, then, the
 
 Kitchens
 
 majority faced a conundrum: on what basis can we conclude that any defense counsel who merely acquiesces in an incorrect jury instruction has knowingly and voluntarily chosen to waive her client's right to a properly instructed jury, when it is at least as likely that, in the "the hurried and ... hectic process of trial";
 
 People
 
 v.
 
 Ladas
 
 ,
 
 12 Ill.2d 290
 
 , 294,
 
 146 N.E.2d 57
 
 (1957) ; she simply failed to identify the defect later claimed on appeal?
 

 Kitchens
 
 ' initial solution to this conundrum was to take refuge in what the majority in that case conceded
 as a pure "legal fiction," namely, the presumption that a defense counsel who reviews and then acquiesces in the trial court's proposed instructions has considered and declined to raise every potential objection to every part of the instructions. (Internal quotation marks omitted.)
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 487 n.25,
 
 10 A.3d 942
 
 . This legal fiction justification for the
 
 Kitchens
 
 rule was illogical and unfounded from the start, and, to their credit, both the state and the majority in the present case now appear to have disavowed it. In its stead, however, they have set an equally implausible rationale, namely, that each defense counsel, upon reviewing the trial court's proposed jury charge, knowingly and voluntarily waives her client's procedural right to later challenge those instructions on appeal.
 

 Unfortunately, this new theory fares no better than
 
 Kitchens
 
 ' original legal fiction theory. There is a strong presumption against a finding of waiver, especially with respect to the constitutional rights of criminal defendants, and waiver-whether substantive or procedural-can be found only when there is unambiguous evidence that the defendant, with full understanding of his rights, actually intends to waive them. Each of these principles is black letter law, and each is deeply and firmly rooted in the law of this state. The
 
 Kitchens
 
 rule violates all of them. To jettison these well established rules, merely to achieve a desired policy outcome, is to place at risk not only our
 
 Golding
 
 jurisprudence, and the fundamental rights of criminal defendants, but all of the other branches of the law in which the concept of waiver plays a significant role.
 

 Rather than adding epicycle upon epicycle in a futile attempt to salvage the unprecedented and unnecessary
 
 Kitchens
 
 rule, we should admit the obvious. Descriptively, mere acquiescence, without something more, simply does not meet the high standard our law imposes for establishing a waiver of a defendant's constitutional
 rights. Normatively, the policy arguments that appear to animate these continued efforts to undercut our well established
 
 Golding
 
 jurisprudence are untested and unpersuasive. I therefore agree with the defendant, Brandon Montrell Bellamy, that
 
 Kitchens
 
 should be overruled as a failed experiment and that we should return to our pre-
 
 Kitchens
 
 jurisprudence governing the reviewability of unpreserved claims. See part I of this opinion. Specifically, an unpreserved claim that instructional error of constitutional magnitude has occurred should be unreviewable under
 
 Golding
 
 only when (1) defense counsel induced or invited the error, or (2) it clearly can be inferred that counsel-or the defendant-actually was aware of the alleged defect in the instruction but chose for strategic or other reasons not to object (true waiver).
 

 Although I conclude that the defendant's unpreserved claim of instructional error was not waived under the proper legal standard, I do agree with the state that the claim is unreviewable under
 
 Golding
 
 because the alleged error is not of constitutional magnitude. See part II of this opinion. For this reason, I concur in the judgment.
 

 I
 

 KITCHENS
 
 SHOULD BE OVERRULED
 

 Although the court in
 
 Kitchens
 
 was not always clear or precise in its use of the term "waiver," I understand the
 
 Kitchens
 
 rule-that the defendant implicitly waives the right to raise unpreserved claims of instructional error on appeal-to encompass both a descriptive element (it purports to describe the defendant's actual conduct) and a normative element (it tells us what the legal consequences of that conduct should be). See 28 Am. Jur. 2d 503-504, Estoppel and Waiver § 37 (2011). Descriptively, the court in
 
 Kitchens
 
 posited that acquiescence under the conditions outlined in that case supports
 an inference that defense counsel did in fact knowingly and voluntarily relinquish any and all
 challenges to the proposed instructions. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 483-85,
 
 10 A.3d 942
 
 . Normatively, the court concluded that, for various reasons of public policy, it is desirable and appropriate to treat such challenges as waived and unreviewable on appeal. See id., at 486-98,
 
 10 A.3d 942
 
 . Both of these conclusions are indefensible.
 

 In this part of the opinion, I explain the three fundamental flaws in the
 
 Kitchens
 
 rule, both as originally rationalized in
 
 Kitchens
 
 and as reconstituted by the state in the present case: (1) it represents a dramatic departure from our prior
 
 Golding
 
 jurisprudence; see part I A of this opinion; (2) descriptively, it is predicated on an illogical and fictitious account of what actually happens when defense counsel acquiesces in the trial court's jury instructions; see part I B of this opinion; and (3) normatively, it carves out an unwarranted exception to
 
 Golding
 
 review for instructional errors on the basis of untested and unpersuasive policy arguments. See part I C of this opinion. I also explain how the
 
 Kitchens
 
 rule easily can be defeated; see part I D of this opinion; and why I am not persuaded by the state's argument that stare decisis requires that we retain the
 
 Kitchens
 
 rule despite these serious defects. See part I E of this opinion.
 

 A
 

 Kitchens
 
 Overturned and Confused Our
 
 Golding
 
 Jurisprudence
 

 In
 
 Kitchens
 
 , the stated goal of the majority was to clarify Connecticut law on implied waiver, particularly with respect to jury instruction challenges.
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 474,
 
 10 A.3d 942
 
 . Unfortunately, by misconstruing our
 
 Golding
 
 jurisprudence in order to reach a desired policy outcome,
 
 Kitchens
 
 failed to achieve that goal, and the majority in the present case has simply
 made matters worse. In addition, muddled and inconsistent use of key terminology, both in the present case and in
 
 Kitchens
 
 , has left reviewing courts without adequate guidance when addressing such claims.
 

 1
 

 Kitchens
 
 Misstated and Departed from Our
 
 Golding
 
 Jurisprudence
 

 I recognize that the question of whether a defendant has waived his constitutional rights hinges to some degree on the unique facts and circumstances of any given case. Nevertheless, our cases addressing the reviewability of unpreserved claims of instructional error divide fairly readily into three general categories.
 

 First, at one end of the spectrum, are those cases in which defense counsel sits silently by as the court instructs the jury, with counsel giving no indication whether she objects to or agrees with the court's instructions. See, e.g.,
 
 State
 
 v.
 
 Kurvin
 
 ,
 
 186 Conn. 555
 
 , 557, 563-64,
 
 442 A.2d 1327
 
 (1982). Although run-of-the-mill claims of instructional error are forfeited if not timely raised at trial and, therefore, are not reviewable on appeal, there is general agreement that such conduct by counsel does not constitute an implied
 
 waiver
 
 of unpreserved claims of constitutional error.
 
 [3]
 

 See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 483 n.23,
 
 10 A.3d 942
 
 . Accordingly, such claims are reviewable on appeal if the
 
 Golding
 
 requirements are otherwise satisfied. See
 
 id.
 

 Second, at the other end of the spectrum, is a broad class of cases in which something in the record indicates either that defense counsel has knowingly and voluntarily waived, on behalf of the defendant, the particular objection at issue on appeal (true waiver), or that she has induced or invited the instructional error that is subsequently challenged on appeal. We have found true waiver both when defense counsel expressly waives the objection at issue,
 
 [4]
 
 and in various situations in which the only reasonable inference is that counsel actually intends to waive the objection (implied waiver). This court or the Appellate Court has found implied waiver, for instance, when it is clear from the record that defense counsel actually was aware of the alleged instructional defect but declined to object or agreed to a curative instruction and thus impliedly waived any objection,
 
 [5]
 
 and also when the trial court
 record strongly suggests that defense counsel declined to object to a particular instruction for identifiable strategic reasons.
 
 [6]
 
 Similarly, we have found induced or invited error under three circumstances:
 (1) when counsel drafts for the court the instructions later challenged on appeal;
 
 [7]
 
 (2) requests that the trial court draft or reiterate the challenged instruction;
 
 [8]
 
 or (3) adopts the
 challenged instruction, or the legal principle on which it is based, as a component of the defense theory.
 
 [9]
 
 Although the majority in
 
 Kitchens
 
 contended that we did not rely on the concepts of induced or invited error in cases of the latter two types; see id., at 469-70, 472,
 
 88 A.3d 445
 
 ; that clearly is not true. Several of the cited cases, while also using the general term "waiver," expressly refer to the alleged error as one that was induced or invited by the defendant. See, e.g.,
 
 State
 
 v.
 
 Fabricatore
 
 ,
 
 281 Conn. 469
 
 , 481-83 and n.18,
 
 915 A.2d 872
 
 (2007) ;
 
 State
 
 v.
 
 Cooper
 
 ,
 
 38 Conn.App. 661
 
 , 670,
 
 664 A.2d 773
 
 , cert. denied,
 
 235 Conn. 908
 
 ,
 
 665 A.2d 903
 
 (1995), cert. denied,
 
 517 U.S. 1214
 
 ,
 
 116 S.Ct. 1837
 
 ,
 
 134 L.Ed.2d 940
 
 (1996) ; see also
 
 State
 
 v.
 
 Scognamiglio
 
 ,
 
 202 Conn. 18
 
 , 25,
 
 519 A.2d 607
 
 (1987). Moreover, in each cited case, we relied on the fact that counsel not only declined to object to the instruction at issue, but also actively requested the sort of instruction later challenged on appeal or somehow adopted the principle of law on which it was predicated. See footnotes 8 and 9 of this opinion. Indeed, legal scholars have long classified under the rubric of induced error not only cases such as
 
 State
 
 v.
 
 Coward
 
 ,
 
 292 Conn. 296
 
 , 305,
 
 972 A.2d 691
 
 (2009), and
 
 State
 
 v.
 
 Cruz
 
 ,
 
 269 Conn. 97
 
 , 105, 107,
 
 848 A.2d 445
 
 (2004), in which the appellant drafts or requests the actual
 challenged instruction, but also cases in which the appellant either requests that the court give an instruction of that sort; see W. Maltbie, Connecticut Appellate Procedure in the Supreme Court of Errors of Connecticut (2d Ed.
 1957) § 96, p. 117 and n.16; or invokes the contested rule of law; see
 
 id.,
 
 § 40, pp. 45-46; see also
 
 State
 
 v.
 
 Akande
 
 ,
 
 299 Conn. 551
 
 , 560,
 
 11 A.3d 140
 
 (2011) (implicitly recognizing that
 
 State
 
 v.
 
 Foster
 
 ,
 
 293 Conn. 327
 
 ,
 
 977 A.2d 199
 
 [2009], was case of induced error).
 

 As to this second category of cases, I am in complete agreement with the majority that, if defense counsel either (1) induces or invites the claimed error, or (2) truly and unequivocally waives any objection, with the possible exception of plain error, the claim is not reviewable on appeal, even if the error is of constitutional magnitude. The rationale for the rule that a party who induces or invites an error cannot be heard on appeal to complain about that error is essentially one of unclean hands: "[t]o allow [a] defendant to seek reversal [after] his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.)
 
 State
 
 v.
 
 Cruz
 
 , supra,
 
 269 Conn. at 106
 
 ,
 
 848 A.2d 445
 
 ; see also
 
 Gaffney
 
 v.
 
 Board of Trustees of the Orland Fire Protection District
 
 ,
 
 360 Ill.Dec. 549
 
 ,
 
 969 N.E.2d 359
 
 , 368 (2012) ("it would be manifestly unfair to grant a party relief based on error introduced into the proceedings by that party");
 
 Tenbusch
 
 v.
 
 Linn County
 
 ,
 
 172 Or.App. 172
 
 , 177 n.6,
 
 18 P.3d 419
 
 (induced error doctrine guards against strategic gaming of judicial system), review denied,
 
 332 Or. 305
 
 ,
 
 27 P.3d 1045
 
 (2001).
 

 The doctrine of waiver, by contrast, is animated largely by the principle of respect for autonomy.
 
 [10]
 
 As
 one scholar has explained, "once the defendant has made a free and informed decision to forgo his constitutional defenses, he may constitutionally be held to the consequences of his election." P. Westen, "Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure,"
 
 75 Mich. L. Rev. 1214
 
 , 1254-55 (1977). In addition, the principle of judicial estoppel
 
 [11]
 
 underlies the doctrines of both waiver and
 induced error. See
 
 S.H.V.C., Inc
 
 . v.
 
 Roy
 
 ,
 
 188 Conn. 503
 
 , 510,
 
 450 A.2d 351
 
 (1982). By contrast, the rationales on which the state relies-the finality of criminal convictions, fairness to the trial court and the state, and incentivizing diligence by defense counsel at a time when errors can still be corrected-apply equally to types of claims other than instructional errors. In
 
 Golding
 
 , we made a determination that those considerations are outweighed by the principle that a criminal defendant, at risk of life and liberty, should not be wrongly deprived of his fundamental constitutional rights due to the inadvertence of defense counsel. See
 
 State
 
 v.
 
 Brunetti
 
 ,
 
 279 Conn. 39
 
 , 55,
 
 901 A.2d 1
 
 (2006), cert. denied,
 
 549 U.S. 1212
 
 ,
 
 127 S.Ct. 1328
 
 ,
 
 167 L.Ed.2d 85
 
 (2007) ; see also part I C of this opinion.
 The only category of cases over which I disagree with the majority with respect to the reviewability of unpreserved claims is the third category of cases, namely, those in which defense counsel vocalizes that she has no objection to, is satisfied with, or agrees to the court's instructions, but does not otherwise waive her client's right to object or induce the claimed error by drafting, requesting, or adopting the challenged instruction. Prior to
 
 Kitchens
 
 , we consistently held that claims of this sort are reviewable on appeal if they otherwise satisfy the four
 
 Golding
 
 requirements.
 
 [12]
 
 I am not aware of any pre-
 
 Kitchens
 
 case-and the majority is unable to cite any-in which this court presumed waiver solely on the basis of defense counsel's acquiescence in the trial court's draft instructions. Although the majority in
 
 Kitchens
 
 maintained that we found waiver by acquiescence in cases such as
 
 State
 
 v.
 
 Hampton
 
 ,
 
 293 Conn. 435
 
 , 450,
 
 988 A.2d 167
 
 (2009),
 
 State
 
 v.
 
 Foster
 
 , supra,
 
 293 Conn. 342
 
 ,
 
 977 A.2d 636
 
 ,
 
 State
 
 v.
 
 Holness
 
 ,
 
 289 Conn. 535
 
 , 542,
 
 958 A.2d 754
 
 (2008),
 
 State
 
 v.
 
 Brewer
 
 ,
 
 283 Conn. 352
 
 , 353,
 
 927 A.2d 825
 
 (2007), and
 
 State
 
 v.
 
 Fabricatore
 
 , supra,
 
 281 Conn. at 481
 
 ,
 
 915 A.2d 872
 
 ; see
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 471-72,
 
 10 A.3d 942
 
 ; in reality, each of those cases featured significant additional indicia of either true waiver or
 induced error.
 
 [13]
 
 See
 
 State
 
 v.
 
 Ebron
 
 ,
 
 292 Conn. 656
 
 , 680-82,
 
 975 A.2d 17
 
 (2009), overruled in part on other grounds by
 
 State
 
 v.
 
 Kitchens
 
 ,
 
 299 Conn. 447
 
 ,
 
 10 A.3d 942
 
 (2011). The
 
 Kitchens
 
 rule thus represents a novel and, as I explain more fully hereinafter; see part I C of this opinion; wholly unwarranted departure from our well established
 
 Golding
 
 jurisprudence with respect to this third category of instructional error cases.
 
 [14]
 
 2
 

 Kitchens
 
 Failed To Provide Clear Guidance
 

 One flaw in
 
 Kitchens
 
 , then, is that the majority in that case, like the majority in the present case, failed to properly distinguish between (1) cases in which defense counsel merely acquiesced in the trial court's proposed jury charge, and in which we traditionally found unpreserved constitutional claims reviewable under
 
 Golding
 
 , and (2) cases in which counsel actively induced or knowingly and voluntarily waived objections to the charge at issue, and in which we found unpreserved claims unreviewable under the third prong of
 
 Golding
 
 . A second, related flaw is that the majority in
 
 Kitchens
 
 further muddled these distinctions and failed to provide the reviewing court with clear guidance by using key terminology in a misleading and inconsistent manner. Perhaps the best (or worst) example of this is the court's inconsistent use of the term "acquiescence."
 

 Descriptively, the majority in
 
 Kitchens
 
 described as acquiescence everything from defense counsel's sitting silently by and failing to object to the court's jury charge, to defense counsel's expression of affirmative satisfaction or agreement with the charge. Compare, e.g.,
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 476 n.20,
 
 10 A.3d 942
 
 (equating acquiescence with mere awareness of and failure to object to instruction at issue), with
 
 id.,
 
 at 478-79 n.21,
 
 10 A.3d 942
 
 (referring to counsel's expressed satisfaction with instructions as acquiescence); see also id., at 466, 480, 482,
 
 10 A.3d 942
 
 (referring to conduct in
 
 Kitchens
 
 as example of acquiescence). Of greater concern,
 
 Kitchens
 
 provided diametrically opposed guidance as to the legal consequences that follow from a finding that defense counsel acquiesced in the trial court's proposed jury instructions. Compare
 
 id.,
 
 at 483 n.23,
 
 10 A.3d 942
 
 ("[t]he standard that we describe would not allow waiver to be presumed ... from defense counsel's mere acquiescence in, or failure to object to, the jury instructions"), with
 
 id.,
 
 at 494-95 n.27,
 
 10 A.3d 942
 
 (acquiescence is presumed to be tactical and, therefore, results in waiver).
 

 Similarly, although the court in
 
 Kitchens
 
 , and the majority in the present case, repeatedly reassures us that defense counsel implicitly waives jury instruction challenges only by "affirmatively" accepting the trial court's proposed instructions; id., at 482-83,
 
 10 A.3d 942
 
 ; see id., at 496,
 
 10 A.3d 942
 
 ; see also footnote 9 of the majority opinion; in the same breath, the majority cautions that counsel's mere acquiescence will result in waiver, even though that acquiescence, by definition, entails passive rather than affirmative acceptance. See Black's Law Dictionary (10th Ed. 2014) p. 27 (defining "acquiesce" as "[t]o accept tacitly or passively; to give implied consent"); Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 11 (defining "acquiesce" as "to accept, comply or submit tacitly or passively"); see also
 
 Aguilar Gonzalez
 
 v.
 
 Mukasey
 
 ,
 
 534 F.3d 1204
 
 , 1209 (9th Cir. 2008) ("[a]cquiescence is not an affirmative act");
 
 State
 
 v.
 
 Devalda
 
 ,
 
 306 Conn. 494
 
 , 508,
 
 50 A.3d 882
 
 (2012) ("acquiescence
 ... commonly is understood to be a form of consent typified by passivity or lack of protest, rather than active
 agreement" [emphasis omitted; footnote omitted] ).
 

 If the majority is committed to retaining the
 
 Kitchens
 
 rule, then it should use this second opportunity to clarify our waiver jurisprudence to provide clearer guidance as to what sorts of conduct by defense counsel will and will not be deemed to constitute an implied waiver. Moreover, the majority should have the courage of its convictions with respect to
 
 Kitchens
 
 . If waiver is to be found only in cases in which there is an actual
 
 affirmative
 
 assent, then the majority should clarify that the numerous post-
 
 Kitchens
 
 cases in which defense counsel simply passively acquiesced in the trial court's jury instructions were wrongly decided and that the appellants in those cases were entitled to have their claims reviewed. See, e.g.,
 
 State
 
 v.
 
 Akande
 
 , supra, 299 Conn. at 559, 562,
 
 11 A.3d 140
 
 (finding waiver when defense counsel, given opportunity to object to proposed instructions, merely replied, " '[n]o, Your Honor' ");
 
 State
 
 v.
 
 Brown
 
 ,
 
 153 Conn.App. 507
 
 , 534,
 
 101 A.3d 375
 
 (2014) (finding waiver merely because "[a]t no time during the charging conference did [defense] counsel challenge the court's instructions on the elements of conspiracy"), cert. granted,
 
 319 Conn. 901
 
 ,
 
 122 A.3d 636
 
 (2015) ;
 
 State
 
 v.
 
 Reddick
 
 ,
 
 153 Conn.App. 69
 
 , 82,
 
 100 A.3d 439
 
 (finding waiver when defense counsel merely "stated that he had no further objection to the draft instructions"), cert. dismissed,
 
 314 Conn. 934
 
 ,
 
 102 A.3d 85
 
 (2014), and cert. denied,
 
 315 Conn. 904
 
 ,
 
 104 A.3d 757
 
 (2014) ;
 
 State
 
 v.
 
 Lee
 
 ,
 
 138 Conn.App. 420
 
 , 450, 451,
 
 52 A.3d 736
 
 (2012) (finding waiver when defense counsel merely indicated that there were no disagreements as to charge and "voiced no other exceptions or concerns"), cert. granted,
 
 321 Conn. 911
 
 ,
 
 136 A.3d 644
 
 (2016).
 
 [15]
 
 On the other hand, if mere acquiescence is now to be the stuff of waiver, then the majority should stop repeating the affirmative assent language, which gives the misleading impression that waiver will be implied only when counsel expresses actual agreement with the trial court's instructions. Call a fig a fig, and tell both the bar and the public how low the standard now is for finding that counsel has, without ever actually agreeing to the court's instructions, extinguished a client's right to raise constitutional claims on appeal.
 
 [16]
 

 B
 

 Kitchens
 
 Improperly Conflated Acquiescence and Waiver
 

 In part I A of this opinion, I explained how the court in
 
 Kitchens
 
 misread this court's
 
 Golding
 
 jurisprudence and how, prior to
 
 Kitchens
 
 , we treated unpreserved claims of instructional error as forfeited but not waived when defense counsel merely acquiesced in a trial court's draft jury charge. In this part of the opinion, I explain why the majority in
 
 Kitchens
 
 erred in deviating from that precedent because
 mere acquiescence, while possibly supporting a finding of forfeiture, will never satisfy the well established standards for an implied waiver of fundamental constitutional rights. In its present
 attempt to shore up the obvious flaws in
 
 Kitchens
 
 ' analysis of the issue, the state has succeeded only in replacing a fiction with a fallacy.
 

 1
 

 Shortcomings of the Original
 
 Kitchens
 
 Rationale
 

 In
 
 Kitchens
 
 , the state argued that a defense counsel who, following a meaningful opportunity to review the trial court's proposed jury charge, fails to object that the charge is deficient in some particular way, should be deemed to have done so for strategic reasons and, therefore, to have impliedly waived that objection.
 
 State
 
 v.
 
 Kitchens
 
 , Conn. Supreme Court Records & Briefs, March Term, 2010, State's Brief pp. 21-22. The majority in
 
 Kitchens
 
 largely adopted both the state's proposed rule and the stated rationale for the rule, holding that, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given,
 
 the defendant may be deemed to have knowledge of any potential flaws therein
 
 and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." (Emphasis added.)
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 482-83,
 
 10 A.3d 942
 
 . In other words, as the majority in
 
 Kitchens
 
 repeatedly emphasized, the
 
 Kitchens
 
 rule was predicated on the theory that competent defense counsel would have been aware of any and all potentially meritorious constitutional objections to the court's proposed charge and, therefore, that counsel's choice not to object must have been intentional and strategic. See, e.g., id., at 469,
 
 10 A.3d 942
 
 (counsel is assumed to have intended natural consequences of failure to raise known claim); id., at 470,
 
 10 A.3d 942
 
 (theory of implied waiver is predicated on assumption that failure to raise claim was
 result of trial strategy); id., at 482,
 
 10 A.3d 942
 
 (
 
 Kitchens
 
 discussed as example of case in which court "could infer counsel's knowledge of the alleged impropriety"); id., at 491-92,
 
 10 A.3d 942
 
 (competent counsel may be presumed to have been familiar with governing law and to have exercised professional judgment when waiving potential claims);
 
 id.,
 
 at 495 n.27,
 
 50 A.3d 882
 
 ("we build on the presumption of competent counsel by presuming that counsel would have identified the instructional error if given a proper and meaningful opportunity to review the instructions"). The court summarized the rationale underlying the
 
 Kitchens
 
 rule as follows: "[I]f counsel had sufficient notice of the jury instructions and was aware of their content, an inference, or assumption of fact ... can be made that counsel also was aware of any potential constitutional defect that the instructions may have contained and, with full understanding of that defect, opted to refrain from objecting for strategic reasons." (Citation omitted; emphasis omitted; internal quotation marks omitted.)
 
 Id.,
 
 at 487 n.25,
 
 10 A.3d 942
 
 . Notably, although the cited passage suggests that the
 
 Kitchens
 
 rule is based on a
 
 factual
 
 inference
 
 [17]
 
 that counsel is aware of all potential objections, the majority in
 
 Kitchens
 
 ultimately acknowledged that
 this so-called inference is nothing more than a "legal fiction." (Internal quotation marks omitted.)
 
 Id.
 

 The obvious structural cracks in
 
 Kitchens
 
 ' original foundation-both conceptual and practical-have been widely recognized.
 
 [18]
 
 The term "waiver" has almost universally
 been defined as the "voluntary surrender or relinquishment of some known right," or some equivalent expression. 28 Am. Jur. 2d,
 
 supra,
 
 § 35, p. 501; see also
 
 Johnson
 
 v.
 
 Zerbst
 
 ,
 
 304 U.S. 458
 
 , 464,
 
 58 S.Ct. 1019
 
 ,
 
 82 L.Ed. 1461
 
 (1938) ("a waiver is ordinarily an intentional relinquishment of abandonment of a known right or privilege"); cf.
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 483,
 
 10 A.3d 942
 
 . Conceptually, the notion that a factual inference that there has been a knowing and voluntary relinquishment of a fundamental constitutional right can be predicated on a legal
 
 fiction
 
 is at best an oxymoron and at worst a dangerous absurdity. It would be ludicrous, for example, in the closely related context of medical informed consent, to suggest that a physician who performed elective surgery without informing a patient of the various risks involved could justify the omission by reference to a legal fiction, such as that any patient who previously worked in the health-care sector can be presumed already to have such knowledge. Cf.
 
 Logan
 
 v.
 
 Greenwich Hospital Assn
 
 .,
 
 191 Conn. 282
 
 , 294-95,
 
 465 A.2d 294
 
 (1983). It makes even less sense to impute to a criminal defendant knowledge of the myriad challenges that might be brought against a proposed set of jury instructions, as would be required to execute a valid waiver, when even his attorney's awareness of such claims is admittedly fictitious.
 
 [19]
 

 The practical fallacies in the original justification for the
 
 Kitchens
 
 rule are equally apparent. When there is
 nothing in the record to indicate either that defense counsel was aware of the constitutional claim at issue or that counsel intentionally opted to forgo every possible objection to the defective instruction, it is unrealistic to infer, as
 
 Kitchens
 
 requires, that counsel had knowledge of the claim and intentionally abandoned it. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 538-39,
 
 10 A.3d 942
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring). "[B]ecause waiver is the intentional relinquishment or abandonment of a known right ...
 
 Kitchens
 
 requires us to presume, first, that counsel thought of every possible claim, from the most meritorious to the most frivolous, and everything in between, and, second, that, upon due consideration of each and every one of those claims, counsel decided to abandon them all, presumably for strategic reasons. Because it is obviously impossible for any defense attorney, or any team of defense attorneys, to conceive of all potential claims, whether meritorious or not, it is clear that
 
 Kitchens
 
 is predicated on a palpably unrealistic assumption." (Citation omitted; emphasis omitted.)
 
 State
 
 v.
 
 Davis
 
 ,
 
 311 Conn. 468
 
 , 497,
 
 88 A.3d 445
 
 (2014) (
 
 Palmer
 
 ,
 
 J.
 
 , concurring); see also
 
 id.
 
 (explaining that, in reality, "competent defense attorneys invariably raise any and all [potentially meritorious] claims of which they are aware").
 

 The defects in the original justification for
 
 Kitchens
 
 , then, are twofold.
 
 Kitchens
 
 relies on a fiction when the law calls for truth. And the fiction is a flimsy one at that.
 

 2
 

 Shortcomings of the New
 
 Kitchens
 
 Rationale
 

 Apparently recognizing these flaws in
 
 Kitchens
 
 ' foundation, both the state and the majority have now jettisoned the legal fiction rationale. In the present case, they take pains to disavow
 
 Kitchens
 
 ' premise that defense counsel, merely having reviewed and acquiesced
 in a proposed jury charge, may be presumed to have considered and rejected every potential challenge thereto.
 

 Instead, to replace the missing cornerstone, the state now offers-and the majority embraces-a new justification for
 
 Kitchens
 
 ' implied waiver theory. It goes as follows: "[W]hen the trial court asks counsel to make an informed and binding judgment regarding whether to accept the jury instructions and counsel acquiesces, counsel waives
 
 the procedural right
 
 to object to the instructions on any of the multitude of possible grounds that counsel might presently be aware of or later perceive." (Emphasis added.) In other words,
 
 Kitchens
 
 now rests on the theory that defense counsel, by acquiescing in or assenting to the court's jury charge, knowingly and voluntarily relinquishes not a set of specific challenges or objections thereto but, rather, the procedural right of the defendant to later complain about any aspect of the charge. In the remainder of this part of this opinion, I explain why the state's new rationale fares no better than the old one, and why it does not warrant a departure from our pre-
 
 Kitchens
 
 jurisprudence.
 

 The state contends that its new theory does not, in fact, break any new ground but simply applies the preexisting doctrine that the "waiver of the right to exercise a right precludes [the] later assertion of any and all claims bundled within that right." The state argues that this sort of procedural waiver is well established, both in the
 
 Golding
 
 context and with respect to the waiver of other constitutional rights. The argument fails on many levels.
 

 I begin by observing that the state's new theory fails to draw the proper parallel between other constitutional rights and the one at issue in
 
 Kitchens
 
 . When a defendant waives freedoms such as the right to counsel or
 the right to trial by jury, he is waiving just that. What he surrenders, fundamentally, is the assistance of an attorney, or the presence of a jury to decide his fate. That he may later be barred from complaining on appeal that he was deprived of his sixth amendment rights is a
 
 consequence
 
 of that waiver, but the ability to appeal per se is not the right that is waived. In
 
 Kitchens
 
 cases, by the same token, what the defendant allegedly waives is not a general procedural right to object or appeal but, rather, the due process right to be tried by a jury that has been properly instructed on the essential elements of the charged crimes, the state's burden of proof, and other constitutionally significant points of law. See, e.g.,
 
 State
 
 v.
 
 Avila
 
 ,
 
 223 Conn. 595
 
 , 603,
 
 613 A.2d 731
 
 (1992) (right to properly instructed jury is guaranteed by due process clauses of fourteenth amendment to United States constitution
 and article first, § 8, of Connecticut constitution); see also
 
 State
 
 v.
 
 Golding
 
 ,
 
 213 Conn. 233
 
 , 241,
 
 567 A.2d 823
 
 (1989) (jury that is properly instructed as to essential elements of charged crimes is necessary to ensure fair trial). What the state needs to demonstrate, then, is that, by acquiescing in the trial court's instructions, a defendant, through counsel, knowingly and voluntarily relinquishes the right to a properly instructed jury, with the understanding that one consequence of that waiver may be the inability to challenge on appeal any subsequently discovered defects in the instructions. As I discuss hereinafter, the circumstances under which any competent attorney would knowingly and voluntarily make such a waiver, or advise a client to do so, are extremely limited. Whereas defense counsel might waive a particular instructional challenge for strategic or other reasons, it is virtually inconceivable that she would freely choose to relinquish a defendant's general right to enforce his right to a properly instructed jury.
 

 Before I discuss the specific flaws in the state's new macro waiver theory, I review the well established principles
 that govern the law of waiver. "The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." Black's Law Dictionary, supra, p. 1813 (defining "waiver"); see also
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 469,
 
 10 A.3d 942
 
 . With respect to the knowledge element, "[w]aiver arises from an affirmative act and is consensual. It involves the idea of assent, and assent is an act of understanding." (Footnote omitted.) 28 Am. Jur. 2d,
 
 supra,
 
 § 183, p. 648; see also
 
 State
 
 v.
 
 Kitchens
 
 , supra, at 469,
 
 10 A.3d 942
 
 . With respect to intent, because "a waiver is the intentional abandonment or relinquishment of a known right ... an intent to waive must be shown by unequivocal acts or conduct that [is] inconsistent with any intention other than to waive ...." (Footnote omitted.) 28 Am. Jur. 2d,
 
 supra,
 
 § 35, pp. 501-502; see also
 
 State
 
 v.
 
 Johnson
 
 ,
 
 316 Conn. 45
 
 , 55-56,
 
 111 A.3d 436
 
 (2015) ;
 
 Gardner
 
 v.
 
 New London
 
 ,
 
 63 Conn. 267
 
 , 277,
 
 28 A. 42
 
 (1893) ;
 
 Zenon
 
 v.
 
 R.E. Yeagher Management Corp
 
 .,
 
 57 Conn.App. 316
 
 , 327,
 
 748 A.2d 900
 
 (2000). Courts should find a waiver, then, only in the "voluntary abandonment or surrender by a capable person of a right known to him or her to exist with the intent of forever depriving him or her of the benefits of the right." 28 Am. Jur. 2d,
 
 supra,
 
 § 183, pp. 647-48. These same standards apply regardless of whether the alleged waiver is express or implied. See, e.g.,
 
 Wadia Enterprises, Inc
 
 . v.
 
 Hirschfeld
 
 ,
 
 224 Conn. 240
 
 , 251-52,
 
 618 A.2d 506
 
 (1992).
 

 To summarize the governing law, in order to find that a defendant has waived by implication a constitutional right, it must be established (1) unequivocally (2) that the defendant is generally aware of the costs and benefits of waiving the right, and (3) that, with the choice either to retain or relinquish the right, the defendant voluntarily opts to abandon it. Accordingly, if it could be established unequivocally that defense counsel did
 in fact knowingly and voluntarily waive her client's procedural right to object to a trial court's proposed jury charge, then I might agree that the client could be precluded on appeal from challenging particular aspects of the jury charge, even defects of which the defendant and defense counsel were unaware at the time of trial. The problem is, in the typical
 
 Kitchens
 
 scenario, none of these three preconditions for a valid implied waiver is in fact satisfied.
 
 Kitchens
 
 improperly presumes waiver in the absence of clear evidence thereof; it does so despite the fact that no reasonable defendant or defense counsel would knowingly execute such a waiver; and it deprives the defendant of the ability to choose
 
 not
 
 to waive
 his rights, rendering meaningless both the concept of a right and that of a waiver.
 

 The first problem with the state's new theory is that it, no less than the original
 
 Kitchens
 
 rationale, violates the fundamental principle that the waiver of a criminal defendant's constitutional rights cannot be presumed or imputed, but must be demonstrated clearly and unequivocally. "[T]o establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose." 28 Am. Jur. 2d, supra, § 183, p. 648; see also
 
 Gardner
 
 v.
 
 New London
 
 , supra,
 
 63 Conn. at 277
 
 ,
 
 28 A. 42
 
 . Although it is true that a waiver need not be express but, instead, can be implied by conduct, waiver nevertheless cannot be imputed or presumed. See, e.g.,
 
 State
 
 v.
 
 Gore
 
 ,
 
 288 Conn. 770
 
 , 775, 783-84,
 
 955 A.2d 1
 
 (2008) ; see also C. Tams, "Waiver, Acquiescence, and Extinctive Prescription," in The Law of International Responsibility (J. Crawford et al. eds., 2010) pp. 1035-36.
 

 A necessary corollary of this principle is that there is a strong presumption against a finding of waiver, especially a waiver of the constitutional rights of a criminal defendant. See, e.g.,
 
 North Carolina
 
 v.
 
 Butler
 
 ,
 
 441 U.S. 369
 
 , 373,
 
 99 S.Ct. 1755
 
 ,
 
 60 L.Ed.2d 286
 
 (1979) ("courts must presume that a defendant did not waive his rights");
 
 Miranda
 
 v.
 
 Arizona
 
 ,
 
 384 U.S. 436
 
 , 475,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966) ("[t]his [c]ourt has always set high standards of proof for the waiver of constitutional rights"). As the United States Supreme Court explained in
 
 Johnson
 
 v.
 
 Zerbst
 
 , supra,
 
 304 U.S. 458
 
 ,
 
 58 S.Ct. 1019
 
 , "courts indulge every reasonable presumption against waiver of fundamental constitutional rights and ...
 
 do not presume acquiescence in the loss of fundamental rights
 
 ." (Emphasis added; footnote omitted; internal quotation marks omitted.)
 
 Id., at 464
 
 ,
 
 58 S.Ct. 1019
 
 ; accord
 
 State
 
 v.
 
 Woods
 
 ,
 
 297 Conn. 569
 
 , 583-84,
 
 4 A.3d 236
 
 (2010).
 

 It is crystal clear, then, that the concept of implied waiver is not a talisman that courts can raise whenever they would prefer not to consider an unpreserved claim on appeal. Rather, an implied waiver must be a true waiver, knowing and voluntary, and courts must be equally certain before concluding that a defendant has waived by implication his fundamental rights. The only difference between express and implied waiver is that, in the latter case, it is the defendant's conduct, rather than his statements, that leaves no doubt of his intent to waive his rights. So, with respect to the fifth amendment right against self-incrimination, for example, waiver may be inferred when a suspect or a defendant, having been properly instructed as to his right to remain silent, proceeds to make a statement to the police or to testify in his own defense. Under those circumstances, assuming that the suspect or the defendant understands what is meant by the right to remain silent, his subsequent choice to make a statement or to testify
 
 necessarily
 
 implies a voluntary intent to waive that right. See, e.g.,
 
 State
 
 v.
 
 Talton
 
 ,
 
 197 Conn. 280
 
 , 295,
 
 497 A.2d 35
 
 (1985) ("[b]y speaking, the defendant has chosen unambiguously not to assert his right to remain silent"). Similarly, a state will be found to have waived by implication its
 sovereign and constitutional immunity only when no other conclusion reasonably can be drawn. As the United States Supreme Court explained in
 
 Edelman
 
 v.
 
 Jordan
 
 ,
 
 415 U.S. 651
 
 ,
 
 94 S.Ct. 1347
 
 ,
 
 39 L.Ed.2d 662
 
 (1974), "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a [s]tate has waived its constitutional protection under the [e]leventh [a]mendment, we will find waiver only [when] stated by the most express language
 or by such overwhelming implications ... as (will) leave no room for any other reasonable construction." (Internal quotation marks omitted.)
 
 Id., at 673
 
 ,
 
 94 S.Ct. 1347
 
 ; see also
 
 Envirotest Systems Corp
 
 . v.
 
 Commissioner of Motor Vehicles
 
 ,
 
 293 Conn. 382
 
 , 389-90,
 
 978 A.2d 49
 
 (2009) ( "[I]n order for a court to conclude that a statute waives [this state's] sovereign immunity by force of necessary implication, it is not sufficient that the claimed waiver reasonably may be implied from the statutory language. It must, by logical necessity, be the only possible interpretation of the language. ... [W]e must interpret any uncertainty as to the existence of a waiver as preserving sovereign immunity." [Citation omitted; emphasis omitted.] ). Neither the state nor the majority has identified any other fundamental right the true waiver of which would be implied merely by presumption, without unequivocal evidence of an actual intent to waive.
 
 [20]
 
 Nevertheless, the majority, while changing course as to exactly what right is being waived, retains the improper presumption that defense counsel who reviews and acquiesces in the court's proposed instructions knowingly and intentionally waives her client's right to a properly instructed jury, even when the instructions later prove to be defective. Neither the state nor the majority offers any justification for its departure from the black letter legal principle that we will not presume the waiver of fundamental constitutional rights.
 

 The second problem with the state's new macro waiver theory is that, unlike with constitutional protections such as the right to counsel and the right against self-incrimination, there is no reason either to conclude or to assume that the defendant in a typical
 
 Kitchens
 
 scenario has made a knowing and intelligent decision that the benefits of waiving the right outweigh the costs. Although it is true that a defendant need not have an omniscient understanding of every possible repercussion of such a decision in order to execute a valid waiver, a reviewing court must at least assure itself that the defendant is aware of the basic tradeoffs involved. For example, a defendant who opts to testify in his own defense must understand that, in order to obtain the benefits of setting before the jury his version of the facts and his believability as a witness, he must expose himself to the risks associated with cross-examination and impeachment. See, e.g.,
 
 Brown
 
 v.
 
 United States
 
 ,
 
 356 U.S. 148
 
 , 154-55,
 
 78 S.Ct. 622
 
 ,
 
 2 L.Ed.2d 589
 
 (1958). Similarly, in order to knowingly and intelligently
 waive the right to counsel, a defendant must understand that the benefits of self-representation-autonomy and control over trial strategy-are purchased at the cost of an attorney's legal experience, judgment, and familiarity with the rules of practice, all of which help to ensure that the defendant will receive a fair trial. See, e.g.,
 
 Faretta
 
 v.
 
 California
 
 ,
 
 422 U.S. 806
 
 , 834-35,
 
 95 S.Ct. 2525
 
 ,
 
 45 L.Ed.2d 562
 
 (1975) ;
 
 State
 
 v.
 
 Townsend
 
 ,
 
 211 Conn. 215
 
 , 218-19,
 
 558 A.2d 669
 
 (1989). In a typical
 
 Kitchens
 
 case, by contrast, unless there is evidence either that the parties discussed the specific defect at issue, or that defense counsel's failure to object was intentional and strategic, there simply is no basis for concluding that the defendant made an informed and intelligent decision to waive his right to a properly instructed jury.
 

 The state's new theory, namely, that a defendant knowingly chooses to waive not specific objections but, rather, the right to object, presents in turn a new difficulty: why would a defendant ever knowingly waive the right to challenge legally deficient jury instructions when he receives nothing whatsoever in return? For each of the other rights to which the state and the majority analogize the right to a properly instructed jury that was at issue in
 
 Kitchens
 
 , a defendant presumably understands that he will derive some important benefit in exchange for relinquishing the right and, possibly, the ability to appeal if unforeseen problems later arise. For example, a defendant forgoes: the right to counsel for the ability to control his own representation; the right against self-incrimination for the opportunity to testify in his own defense and to tell the jury his side of the story; the right to a jury trial for the ability to have a dispassionate and legally knowledgeable judge determine his guilt; and the right to a trial for the reduced sentencing risk associated with a guilty plea.
 
 [21]
 

 With
 
 Kitchens
 
 , by contrast, one is hard pressed to identify any reason why an informed, intelligent defendant, or defense counsel, would ever choose to waive the right to argue that the jury was improperly charged as to the elements of the charged crimes, the state's burden of proof, or other constitutionally significant legal principles.
 
 [22]
 
 As Judge Sheldon of the Appellate Court has recently explained, "[r]egardless of counsel's particular trial strategy on behalf of his client, he simply has no excuse not to insist that the jury be properly instructed on each essential element of every charged offense .... [T]here is no conceivable tactical justification for defense counsel not to preserve his client's right not to be convicted without proof beyond a reasonable doubt of each essential element of each charged offense by insisting that proper jury instructions be given on those elements ...."
 
 Holloway
 
 v.
 
 Commissioner of Correction
 
 ,
 
 145 Conn.App. 353
 
 , 366-67,
 
 77 A.3d 777
 
 (2013). And if no competent counsel or defendant would waive such a right, then on what basis does the
 majority assume that all such decisions are knowing and intelligent?
 

 The third-and perhaps most significant-flaw in the state's new theory of implied waiver is that it improperly assumes that defense counsel in a
 
 Kitchens
 
 case
 
 voluntarily
 
 chooses to relinquish the defendant's right to challenge the jury instructions on appeal. In order for
 a decision "to be deemed voluntary, it must be the product of an essentially free and unconstrained choice."
 
 United States
 
 v.
 
 Garcia
 
 ,
 
 890 F.2d 355
 
 , 360 (11th Cir. 1989) ; see also Webster's Third New International Dictionary (2002) p. 2564 (defining "voluntary" as "proceeding from the will: produced in or by an act of choice"). Each of the other rights to which the state and the majority analogize the right at issue in
 
 Kitchens
 
 involves a true choice. The defendant can retain counsel or represent himself; he can testify or remain silent; he can opt for trial by jury or a bench trial; he can plead guilty or take his chances at trial. Under
 
 Kitchens
 
 , by contrast, defense counsel who is unaware of any defects in the court's proposed instructions but wishes to retain her client's right to insist on a properly instructed jury and to contest any defects that later come to light is precluded from doing so. The trial court need only afford counsel a reasonable opportunity to review the instructions and then ask her whether they look okay. At that point, counsel cannot articulate objections of which she is not yet aware; nor can she refuse to answer the court's query.
 
 [23]
 

 Her only option is to acquiesce
 
 .
 

 An obvious solution to this conundrum would be to allow counsel under those circumstances to inform the court that, following a careful review of the proposed charge, she is not presently aware of any defects but that her client wishes to retain his due process rights to a properly instructed jury should he later become aware of any defects in the charge. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 541,
 
 10 A.3d 942
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring). In other words, counsel could represent to the court that the defendant "has not raised a constitutional challenge to the charge
 
 because he is unaware of any such claim
 
 ,
 
 and not because he has elected to waive the
 
 [
 
 right
 
 ]."
 

 Emphasis in original.)
 
 Id.
 
 In
 
 Kitchens
 
 , I explained that, "[i]n view of the fact that the doctrine of implied waiver is employed for the purpose of ascertaining an actor's intent when that intent remains
 
 unstated
 
 , counsel's express statement disavowing waiver-reflecting counsel's
 
 actual intent
 
 -necessarily would trump any finding of implied waiver ...." (Emphasis in original.)
 
 Id.
 
 Unfortunately, the majority in
 
 Kitchens
 
 decided to foreclose that option, inexplicably pronouncing that even such a statement by counsel would constitute an "intentional waive[r]."
 
 [24]
 

 Id.,
 
 at 487-88 n.25,
 
 10 A.3d 942
 
 .
 

 At the most fundamental level, a criminal defendant cannot be said to have a constitutional right to a properly instructed jury if he can be
 
 forced
 
 to waive that right against his will and if the law provides no mechanism through which he can retain it if he so chooses. If the majority wishes to decide, for reasons of public policy, that the right to a properly instructed jury will be
 
 forfeited
 
 if not timely exercised,
 
 [25]
 
 and that unpreserved constitutional
 challenges to the instructions will not be subject to
 
 Golding
 
 review on appeal, that at least I can understand. But
 
 Kitchens
 
 , as currently rationalized, renders incoherent, in one fell swoop, both the concept of a right and that of a waiver. It is a high price to pay to avoid having to decide a few more instructional claims.
 
 [26]
 
 To summarize, there is a strong presumption against finding that a criminal defendant has waived his constitutional rights. Even implied waiver of those rights can be found only on the basis of unequivocal evidence that the defendant, with full knowledge and understanding of his rights, actually intends to waive them. These principles are black letter law, and each is deeply and firmly rooted in the law of Connecticut. The majority fails to explain either how these well established criteria are satisfied in the
 
 Kitchens
 
 context, or why they are not applicable. To jettison them, merely to achieve a desired policy outcome, is to place at risk not only our
 
 Golding
 
 jurisprudence, but all of the other branches of the law in which the concept of waiver plays a fundamental role: constitutional law, collective bargaining, tort, contract, insurance, even sovereign immunity. This, I continue to believe, is a serious mistake.
 

 C
 

 Kitchens
 
 Does Not Reflect Sound Judicial or Public Policy
 

 In part I B of this opinion, I explained why I continue to believe that, from a descriptive standpoint, defense counsel who merely acquiesces in a trial court's proposed jury instructions does not thereby signify her client's unequivocal knowing and voluntary intent to relinquish any and all claims, both known and unknown, that the instructions are constitutionally deficient. Because mere acquiescence does not satisfy the well established requirements for a waiver of a defendant's constitutional rights, and because we consistently have held that unpreserved claims that satisfy the four prongs
 of
 
 Golding
 
 are reviewable on appeal unless waived, that should be the end of the story. However, because both the state and the majority also have offered various policy rationales why such claims should be treated
 
 as if
 
 they have been waived, I take this opportunity to reiterate why, from a normative standpoint, I do not believe that the
 
 Kitchens
 
 rule reflects sound judicial or public policy.
 

 Rules of reviewability, such as
 
 Golding
 
 , require that we weigh the constitutional rights of a criminal defendant against the interests of the state in the prompt and efficient administration of justice. See, e.g.,
 P. Westen, supra,
 
 75 Mich. L. Rev. 1238
 
 . On the defendant's side of the ledger are all of the various rationales that underlie the long line of cases in which both this court and our sister courts have concluded that unpreserved claims of error should not be barred from appellate review when the record is adequate and the alleged error is of constitutional magnitude. See, e.g.,
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 239-40
 
 ,
 
 567 A.2d 823
 
 ;
 
 State
 
 v.
 
 Evans
 
 ,
 
 165 Conn. 61
 
 , 70,
 
 327 A.2d 576
 
 (1973) ; see also
 
 Wiborg
 
 v.
 
 United States
 
 ,
 
 163 U.S. 632
 
 , 658,
 
 16 S.Ct. 1127
 
 ,
 
 41 L.Ed. 289
 
 (1896). Chief among those rationales is that, in the event that the state has obtained a criminal conviction solely by violating a defendant's constitutional rights, "it would be a rank miscarriage of justice to allow [the conviction] to stand."
 
 United States
 
 v.
 
 La Guardia
 
 ,
 
 902 F.2d 1010
 
 , 1013 (1st Cir. 1990). "In the fast and fluid nature of a trial, even the most competent counsel can overlook an issue that, in hindsight, appears to be a glaring error, devastating to an accused's interests." T. Erisman, "Defining the Obvious: Addressing the Use and Scope of Plain Error,"
 
 61 A.F. L. Rev. 41
 
 , 47 (2008).
 
 Golding
 
 reflects the fact that our "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them."
 
 Hormel
 
 v.
 
 Helvering
 
 ,
 
 312 U.S. 552
 
 , 557,
 
 61 S.Ct. 719
 
 ,
 
 85 L.Ed. 1037
 
 (1941).
 By reviewing allegations that criminal convictions have been obtained on the basis of serious constitutional violations, appellate tribunals not only ensure that potentially innocent defendants are not made to suffer imprisonment as a result of counsel's inadvertent mistakes, but also help to maintain public confidence in the administration of justice. See, e.g.,
 
 People
 
 v.
 
 Ramos
 
 ,
 
 33 A.D.2d 344
 
 , 348,
 
 308 N.Y.S.2d 195
 
 (1970) ; cf.
 
 Clyatt
 
 v.
 
 United States
 
 ,
 
 197 U.S. 207
 
 , 222,
 
 25 S.Ct. 429
 
 ,
 
 49 L.Ed. 726
 
 (1905) ;
 
 State
 
 v.
 
 Miller
 
 ,
 
 202 Conn. 463
 
 , 469,
 
 522 A.2d 249
 
 (1987). Moreover, permitting appellate review under such circumstances "has a salutary effect on the prosecution's conduct of the trial. If the intelligent prosecutor wishes to guard against the possibility of reversible error, he cannot rely on the incompetence or inexperience of his adversary but, on the contrary, must ... intervene to protect the defendant from the mistakes of counsel." (Internal quotation marks omitted.)
 
 United States
 
 v.
 
 Frady
 
 ,
 
 456 U.S. 152
 
 , 180,
 
 102 S.Ct. 1584
 
 ,
 
 71 L.Ed.2d 816
 
 (1982) (Brennan, J., dissenting). Reviewability thus helps to ensure that the state and the trial court, no less than defense counsel, guard vigilantly against any violations of a defendant's fundamental constitutional rights.
 

 The availability of
 
 Golding
 
 review is especially important in the jury instruction context because of the substantial risk that erroneous instructions, once entrenched, will taint the results of, and go unchallenged in, numerous criminal prosecutions. Several of our recent
 
 Kitchens
 
 cases, including the companion case to the present case; see
 
 State
 
 v.
 
 Herring
 
 ,
 
 323 Conn. 526
 
 ,
 
 147 A.3d 653
 
 (2016); involve claims that certain of the standard criminal jury instructions available on the Connecticut Judicial Branch website
 
 [27]
 
 are unconstitutional,
 either facially or as applied in a particular case. When standard instructions governing a particular point of law are available, both defense counsel and the trial court understandably may be hesitant to second-guess these instructions, which have been drafted and approved by the Criminal Jury Instruction Committee. See
 
 State
 
 v.
 
 Helmedach
 
 ,
 
 125 Conn.App. 125
 
 , 136,
 
 8 A.3d 514
 
 (2010) (presuming that standard jury instructions are correct in law), aff'd,
 
 306 Conn. 61
 
 ,
 
 48 A.3d 664
 
 (2012). In
 
 State
 
 v.
 
 Herring
 
 , supra, at 526, for example, the trial court informed counsel: "I took this straight from the jury instructions that are on the [Judicial Branch] website that are the standard that we should use. ... Unless you have a case that tells me that I should [deviate from those], I'm leery to stray from the standard instructions that have been tested and used over time." The court later remarked: "I'm not going to change all of these charges and go against the standard instructions. I'm loathe to do that because that's where courts get into trouble, when they start making changes." The deference that both defense counsel and the trial courts accord to the standard instructions creates a powerful structural impediment to the raising of constitutional challenges to those instructions at trial, as even the most diligent and competent counsel tend to focus their "political capital" on those objections that they deem reasonably likely to succeed. The availability of
 
 Golding
 
 review is, therefore, essential if defects in these widely used instructions are to be identified and corrected on appeal.
 

 State
 
 v.
 
 Johnson
 
 , supra,
 
 316 Conn. 45
 
 ,
 
 111 A.3d 436
 
 , is an important case in point. In
 
 Johnson
 
 , the Appellate Court determined that, under
 
 Kitchens
 
 , the defendant, Jennifer Johnson, had waived her unpreserved instructional challenge. See
 
 State
 
 v.
 
 Johnson
 
 ,
 
 137 Conn.App. 733
 
 , 760,
 
 49 A.3d 1046
 
 (2012), aff'd,
 
 316 Conn. 45
 
 ,
 
 111 A.3d 436
 
 (2015). On appeal to this court from the Appellate
 Court's judgment, we disagreed, concluding that, due to the unique procedural posture of the case, Johnson's claim had not been waived.
 
 State
 
 v.
 
 Johnson
 
 , supra, at 56-57,
 
 111 A.3d 436
 
 . Reviewing her challenge to the standard jury instructions on nonexclusive constructive possession of contraband, we held that the standard instruction, which the trial court used at Johnson's trial, was constitutionally deficient. Id., at 61,
 
 111 A.3d 436
 
 . Although we ultimately found the error to be harmless; id., at 64,
 
 111 A.3d 436
 
 ; the case afforded us an important opportunity to clarify this area of the law, an opportunity that would have been lost, or at least postponed indefinitely pending the filing and final resolution of a habeas petition, if the state had prevailed on its claim under
 
 Kitchens
 
 . See id., at 61-63,
 
 111 A.3d 436
 
 . Similarly,
 
 State
 
 v.
 
 Pond
 
 ,
 
 315 Conn. 451
 
 ,
 
 108 A.3d 1083
 
 (2015), in which the state argued unsuccessfully that the instructional claims of the defendant, Terrell Williams Pond, were waived under
 
 Kitchens
 
 , allowed us to review, clarify, and develop the law governing the mens rea element of criminal conspiracy, resolving a split of opinion in the Appellate Court.
 
 [28]
 
 See id., at 466-88,
 
 108 A.3d 1083
 
 ; see also
 
 State
 
 v.
 
 Carrion
 
 ,
 
 313 Conn. 823
 
 , 844-45, 847-49,
 
 100 A.3d 361
 
 (2014) (assuming without deciding that claim was not waived under
 
 Kitchens
 
 , and exercising supervisory
 authority to direct trial courts to refrain from instructing juries that state does not want conviction of innocent persons).
 

 In total, of the nearly twenty appeals decided in Connecticut in the five years following our decision in
 
 Kitchens
 
 in which the state argued unsuccessfully that an unpreserved claim of instructional error had been waived, or conceded that such a claim had not been waived, the reviewing court found instructional error-either harmless or reversible-in approximately 40 percent of the cases.
 
 [29]
 
 Similarly, prior to
 
 Kitchens
 
 ,
 
 Golding
 
 review of unpreserved claims afforded us or the Appellate Court an important opportunity to clarify and develop the criminal law in instructional error cases such as
 
 State
 
 v.
 
 Arroyo
 
 ,
 
 284 Conn. 597
 
 , 610,
 
 935 A.2d 975
 
 (2007) (clarifying standard governing trial court's decision to charge jury on third-party culpability evidence),
 
 State
 
 v.
 
 Whelan
 
 ,
 
 200 Conn. 743
 
 , 756-58,
 
 513 A.2d 86
 
 (reconciling inconsistent precedent and holding that " 'more probable than not' " instruction on circumstantial evidence impermissibly diluted state's burden of proving guilt beyond reasonable doubt), cert. denied,
 
 479 U.S. 994
 
 ,
 
 107 S.Ct. 597
 
 ,
 
 93 L.Ed.2d 598
 
 (1986),
 
 State
 
 v.
 
 Nugent
 
 ,
 
 199 Conn. 537
 
 , 545,
 
 508 A.2d 728
 
 (1986)
 

 clarifying common-law right of bail bondsman to apprehend principal),
 
 State
 
 v.
 
 Burke
 
 ,
 
 182 Conn. 330
 
 , 333,
 
 438 A.2d 93
 
 (1980) (holding that trial court must give no unfavorable inference instruction unless defendant requests otherwise), and
 
 State
 
 v.
 
 Sitaras
 
 ,
 
 106 Conn.App. 493
 
 , 507,
 
 942 A.2d 1071
 
 (instructing trial courts to refrain from using certain language in standard criminal jury charge), cert. denied,
 
 287 Conn. 906
 
 ,
 
 950 A.2d 1283
 
 (2008). If the
 
 Kitchens
 
 rule is retained, such opportunities will become increasingly scarce as trial courts adopt the practice of forcing defense counsel to execute a
 
 Kitchens
 
 waiver. Indeed, in most of the recent cases in which the state failed to prevail on its waiver argument under
 
 Kitchens
 
 , the defendant's claim was deemed not to have been waived only because the record did not indicate that the trial court had given defense counsel adequate opportunity to review and comment on the draft charge or a supplemental charge. If the trial court had dotted all of its I's and crossed all of its T's, the errors likely would have gone uncorrected on appeal.
 
 [30]
 

 On the other side of the ledger, the state and the majority contend that
 
 Kitchens
 
 claims should be treated as unreviewable primarily for reasons of expediency and fairness. Neither rationale is persuasive.
 

 With respect to expediency, finality, and judicial economy, the argument for retaining
 
 Kitchens
 
 appears to be animated by the antithetical fears that, if we were to return to the state of the law before
 
 Kitchens
 
 , either (1) this court and especially the Appellate Court would
 be inundated by and forced to dedicate scare judicial resources to resolving nonmeritorious jury instruction claims concocted after the fact by overzealous appellate counsel, or (2) an abundance of
 
 meritorious
 
 claims would result in the reversal of otherwise valid convictions and the need for costly retrials. In fact, the available data suggest that both of these speculative fears are largely unfounded.
 

 With respect to the former concern, there is little evidence that, prior to
 
 Kitchens
 
 , our appellate system was bogged down trying to resolve a disproportionately high number of trivial or nonmeritorious claims challenging the constitutionality of criminal jury instructions. A thorough review of all of the claims of unpreserved error raised by criminal defendants in this court and the Appellate Court during the sixteen years leading up to our consideration of
 
 Golding
 
 , for example, revealed that 10.1 percent of jury instruction claims resulted in a finding of harmful error, whereas only 8.6 percent of noninstructional claims merited reversal. See
 
 State
 
 v.
 
 Golding
 
 , Conn. Supreme Court Records & Briefs, May Term, 1989, Appendix to the Defendant's Supplemental Brief pp. A1-A103 (surveying cases). By contrast, almost none of the claims that certain statements or testimony had been improperly admitted resulted in reversible error; see
 
 id.
 
 ; and, yet, there is no suggestion that meritless claims of that sort are clogging our appellate system and should be unreviewable on appeal.
 

 Moreover, it is now clear that any lightening of our appellate docket as a result of
 
 Kitchens
 
 has been more than offset by what has become a veritable cottage industry in
 
 Kitchens
 
 litigation. That is to say, rather than dedicating our resources to resolving a defendant's legal claim on the merits, this court and the Appellate Court now expend significantly more effort resolving allegations by the state that a particular jury instructional
 claim has been waived and, therefore, is not entitled to appellate review. Because
 
 Kitchens
 
 calls for "a close examination of the record and the particular facts and circumstances of each case";
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 483,
 
 10 A.3d 942
 
 ; our post-
 
 Kitchens
 
 cases fill many pages of the reports parsing the trial court records for a hint of waiver.
 
 [31]
 
 By contrast, once an appellant survives
 
 Kitchens
 
 scrutiny, nonmeritorious claims of instructional error typically can be resolved on the merits in just a few pages or less.
 
 [32]
 
 In some cases, the juxtaposition
 is especially pronounced. For example, in
 
 State
 
 v.
 
 Kirby
 
 ,
 
 137 Conn.App. 29
 
 ,
 
 46 A.3d 1056
 
 , cert. denied,
 
 307 Conn. 908
 
 ,
 
 53 A.3d 222
 
 (2012), the Appellate Court spent six pages determining whether the defendant's claim was waived under
 
 Kitchens
 
 but needed only one paragraph to dispense with his claim on the merits. See id., at 45-51,
 
 46 A.3d 1056
 
 ; see also
 
 State
 
 v.
 
 Ruocco
 
 ,
 
 151 Conn.App. 732
 
 , 739-43,
 
 95 A.3d 573
 
 (2014) (taking approximately five pages to dispose of waiver issue and
 devoting less than one page to merits of instructional claim), aff'd,
 
 322 Conn. 796
 
 ,
 
 144 A.3d 354
 
 (2016).
 

 Of course, judicial efforts do not always correlate perfectly to page counts in the official court reports. In some cases, however, it is beyond cavil that the resources we are dedicating to resolving
 
 Kitchens
 
 quibbles could be better spent interpreting the law. Consider
 
 State
 
 v.
 
 Davis
 
 ,
 
 131 Conn.App. 50
 
 ,
 
 26 A.3d 128
 
 (2011), rev'd,
 
 311 Conn. 468
 
 ,
 
 88 A.3d 445
 
 (2014), in which the Appellate Court penned a ten and one-half page analysis of the
 
 Kitchens
 
 issue, ultimately concluding that the defendant's unpreserved claim of instructional error was impliedly waived. Id., at 55-65,
 
 26 A.3d 128
 
 . We granted certification to appeal;
 
 State
 
 v.
 
 Davis
 
 ,
 
 302 Conn. 943
 
 ,
 
 29 A.3d 468
 
 (2011) ; and, nearly three years later, issued majority and concurring opinions totaling nearly forty pages, in which we concluded that
 
 Kitchens
 
 did not in fact bar review of the defendant's claim.
 
 State
 
 v.
 
 Davis
 
 , supra,
 
 311 Conn. at 483
 
 ,
 
 88 A.3d 445
 
 ; see
 
 id., at 495
 
 ,
 
 88 A.3d 445
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring);
 
 id., at 505
 
 ,
 
 88 A.3d 445
 
 (
 
 McDonald
 
 ,
 
 J.
 
 , concurring). On remand, it required only ten and one-half pages of analysis for the Appellate Court to decide
 
 all
 
 of the defendant's claims on the merits. See
 
 State
 
 v.
 
 Davis
 
 ,
 
 154 Conn.App. 216
 
 , 223-33,
 
 107 A.3d 962
 
 (2014), cert. denied,
 
 315 Conn. 918
 
 ,
 
 107 A.3d 961
 
 (2015). Significant time and expense could have been saved if the Appellate Court had simply reached and resolved the unpreserved claims at the outset.
 

 This is especially true in light of the fact that the failure to review a claim on direct appeal often will result in the need for a more resource intensive habeas trial on the same issue. As we explained in
 
 State
 
 v.
 
 Elson
 
 ,
 
 311 Conn. 726
 
 ,
 
 91 A.3d 862
 
 (2014), "[t]his, of course, serves no judicial economy, as the rapidly written appellate opinion of today is nothing more than kicking the can down the road to be addressed in the habeas petition of tomorrow-a counterproductive
 action that actually increases the net workload of the judicial system." (Internal quotation marks omitted.) Id., at 752,
 
 91 A.3d 862
 
 .
 

 Nor is there much support for the concern that overruling
 
 Kitchens
 
 would disturb settled decisions and force the state to retry criminal convictions long after the fact. In reality, and as the majority is forced to concede, "the number of cases in which a defendant obtain[ed] reversal of his conviction on the basis of
 
 Golding
 
 review ... [prior to
 
 Kitchens
 
 was] negligible."
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 523,
 
 10 A.3d 942
 
 (
 
 Katz
 
 ,
 
 J.
 
 , concurring); see
 also
 
 State
 
 v.
 
 Mungroo
 
 ,
 
 299 Conn. 667
 
 , 679 n.4,
 
 11 A.3d 132
 
 (2011) (
 
 Katz
 
 ,
 
 J.
 
 , dissenting) (in decade preceding
 
 Kitchens
 
 , Supreme Court and Appellate Court together found reversible error on
 
 Golding
 
 review of jury instruction challenges approximately twice per year on average).
 
 [33]
 
 A far more frequent outcome before
 
 Kitchens
 
 was that appellate review revealed harmless errors in the trial court's jury instructions. See
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 241
 
 ,
 
 567 A.2d 823
 
 .
 
 [34]
 
 Such
 decisions play an important role in our jurisprudence: they provide a forum for clarifying and developing the law but place no additional burdens on the state or the judicial system. Indeed, as I discuss more fully hereinafter, they may eliminate the need for a costly habeas petition and subsequent appeals that would result from finding a claim unreviewable under
 
 Kitchens
 
 . Accordingly, I am not swayed by the parade of horribles that the state invokes in its brief.
 

 The state's second set of policy arguments relates to questions of fairness. I understand the state's position to be that defense counsel who fails to raise a potentially meritorious challenge during the charging conference does so either for tactical reasons or inadvertently. If the decision is tactical, the state contends, we should not give the defendant a second bite at the apple and permit counsel to try out a different tactic on appeal when the tactic utilized at trial was unsuccessful. By contrast, if the failure to object is inadvertent, then we should adopt rules of reviewability that will incentivize greater diligence or, in the absence of such rules, leave to the habeas courts any claims that counsel's performance was ineffective. In either case, the state believes that allowing a defendant to press on appeal objections that his counsel failed to raise at trial would be unfair both to the state and to the trial court.
 

 Although the state's concerns are well taken, I ultimately find its arguments to be unpersuasive. Turning first to the question of tactical or strategic waiver, I
 agree with the defendant that it is almost inconceivable that defense counsel would intentionally hold back a potentially meritorious objection and knowingly permit her client's constitutional rights to be trampled, solely so that, if her client is ultimately convicted, appellate counsel might advance a winning argument on appeal. As Judge Henry J. Friendly once explained, "it is exceedingly hard to visualize a case [in which] a defendant or his lawyer would deliberately lay aside a meritorious claim so as to raise it after the defendant was jailed." H. Friendly, "Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,"
 
 38 U. Chi. L. Rev. 142
 
 , 158 (1970).
 

 When the state and the majority presume that a decision to forgo potential objections to the trial court's proposed jury charge is strategic, however, I do not believe that this is the sort of strategy they have in mind.
 
 [35]
 
 Rather, the concern seems to be that a defendant, having pursued one strategy or theory of the case at trial and having failed to prevail, might change direction on appeal and argue that he should have received the benefit of instructions reflecting a different, perhaps contradictory, strategy.
 

 As I already discussed; see part I A of this opinion; when the record clearly suggests that defense counsel's failure to raise an instructional challenge at trial was the result of a tactical decision, I agree with the majority that the unpreserved claim should be deemed waived and unreviewable on appeal. This often will be the case, for instance, when counsel does not seek an instruction as to lesser included offenses in the hope that the jury will find the defendant not guilty of the more serious
 charge; see, e.g.,
 
 United States
 
 v.
 
 Estrada
 

 -
 

 Fernandez
 
 ,
 
 150 F.3d 491
 
 , 496 (5th Cir. 1998) ; cf. L. Cunningham, "Appellate Review of Unpreserved Questions in Criminal Cases: An Attempt to Define the 'Interest of Justice,' "
 
 11 J. App. Prac. & Process 285
 
 , 321 (2010) ; or when counsel advances a theory of mistaken identity and refrains from seeking instructions, such as on self-defense or sexual consent, that would tend to suggest to the jury that the defendant was in fact the perpetrator. See, e.g.,
 
 State
 
 v.
 
 Fuller
 
 ,
 
 158 Conn.App. 378
 
 , 384-85,
 
 119 A.3d 589
 
 (2015) ; see also
 
 United States
 
 v.
 
 Crowley
 
 ,
 
 318 F.3d 401
 
 , 411 (2d Cir.) (concluding that defense counsel's failure to seek instruction on renunciation represented reasonable strategic choice not to suggest to jury that defendant began with but later abandoned criminal purpose), cert. denied,
 
 540 U.S. 894
 
 ,
 
 124 S.Ct. 239
 
 ,
 
 157 L.Ed.2d 171
 
 (2003). Under those or similar circumstances, I have no difficulty concluding that counsel's failure to object was strategic and resulted in an implied waiver of any unpreserved challenges.
 

 What I cannot agree to is
 
 Kitchens
 
 '
 
 presumption
 
 that counsel's decision not to raise an objection at trial must be knowing and strategic, even when the record contains no indication thereof. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 470, 481-83,
 
 10 A.3d 942
 
 . As Justice Katz explained in her concurring opinion in
 
 Kitchens
 
 , a presumption of strategic waiver "undermines this court's exhortation that
 
 Golding
 
 review is intended to break down any categorical or absolute bars to appellate review
 by foreclosing review of an entire class of trial errors. Moreover, by concluding that [a] mere failure to object to an improper instruction constitutes a waiver of the defendant's appellate rights, the [defendant is] essentially single [d] ... out to bear the consequences of the error despite the equal obligations [of] the trial court and the [state] to identify and to correct the error." (Emphasis omitted.) Id., at 518-19,
 
 10 A.3d 942
 
 (
 
 Katz
 
 ,
 
 J.
 
 , concurring);
 see also
 
 Moreno
 
 v.
 
 State
 
 ,
 
 341 P.3d 1134
 
 , 1146 (Alaska 2015) ("[w]hether the defendant made a tactical decision not to object or intelligently waived an opportunity to object must be plainly obvious from the face of the record, not presumed in the face of a silent or ambiguous record").
 
 [36]
 

 Lastly, the state contends that, even if counsel's failure to object is not strategic but, rather, merely inadvertent, we should treat any unpreserved objections as waived because such a rule will provide defense counsel, the state, and the trial court with an incentive to identify any instructional errors at trial, when they can be readily corrected. I must confess that I am at a loss to understand the majority's apparent belief that treating unpreserved challenges as waived, and insulating them from appellate review, will somehow incentivize the state and trial courts to exercise greater diligence in unearthing such errors. It is the state and the trial
 court, after all, that stand to lose should a conviction be overturned as a result of the court's instructional error. One would think that, if any extra motivation is required for them to look after the defendant's constitutional rights, it would be the possibility of reversal that would inspire them, rather than the impossibility. In any event, I will focus my analysis on the state's argument that the
 
 Kitchens
 
 rule is needed to motivate defense counsel to adequately scrutinize the court's instructions at trial. There are at least three problems with the state's argument.
 

 First, the majority has provided no support, either empirical or anecdotal, for its assumption that denying review under
 
 Kitchens
 
 will reduce the number of cases in which defense counsel fails to identify and object to instructional errors due to mistake or inadvertence. As both courts and commentators have recognized, such a rule offers little deterrent value with respect to such oversights, "only marginally advances systemic fairness and does so by
 exacting a heavy price in individual fairness."
 
 State
 
 v.
 
 Hargrove
 
 ,
 
 48 Kan.App.2d 522
 
 , 554,
 
 293 P.3d 787
 
 (2013) ; see also L. Cunningham, supra,
 
 11 J. App. Prac. & Process 317
 
 (trial attorneys should not be "held to the impossible standard of predicting, in the heat of battle, every conceivable legal issue that could provide for appellate relief after conviction"). In fact, the available evidence suggests that
 
 Kitchens
 
 has done little to increase the identification and rectification of instructional errors at trial, as this court and the Appellate Court have entertained dozens of claims of unpreserved instructional error in the five and one-half years since that case was decided, with no indication that the incidence of such claims is on the wane.
 

 Second, even if
 
 Kitchens
 
 did create an incentive for defense counsel to exhaustively scrutinize each of the trial court's draft instructions for any possible error, it is far from clear that more efficient administration of
 justice would result. As the United States Supreme Court has cautioned, "such a rule would result in counsel's inevitably making a long and virtually useless laundry list of objections to [instructions] that were plainly supported by existing precedent."
 
 Johnson
 
 v.
 
 United States
 
 ,
 
 520 U.S. 461
 
 , 468,
 
 117 S.Ct. 1544
 
 ,
 
 137 L.Ed.2d 718
 
 (1997). Better instead to trust that competent counsel will identify and raise any defects apparent to her at the time of trial, as is her professional obligation; see
 
 State
 
 v.
 
 Mungroo
 
 , supra, 299 Conn. at 679-80,
 
 11 A.3d 132
 
 (
 
 Katz
 
 ,
 
 J.
 
 , dissenting); W. Pizzi & M. Hoffman, "Jury Selection Errors on Appeal,"
 
 38 Am. Crim. L. Rev. 1391
 
 , 1404-1405 (2001) ; and then to rely on the safety net of independent appellate review to identify those hidden defects or potentially erroneous standard instructions most worthy of our consideration.
 

 Third, neither the state nor the majority has provided any compelling rationale for carving out this single exception to our general rule of
 
 Golding
 
 review. We continue to review unpreserved claims of constitutional error that arises during other phases of the trial-everything from voir dire to the taking of evidence to jury deliberations-even though a
 
 Kitchens
 
 -type rule arguably would incentivize defense counsel to more diligently root out error in those stages of the process as well. Why then a special rule for jury instructions?
 

 The only answer that the state offers is that the drafting of jury instructions is unique in that, at least in theory, it is a more collaborative process, during which the rules of practice encourage the state, defense counsel, and the trial court to pause and jointly reflect on the proper way to instruct the jury on the law. See Practice Book §§ 42-16 through 42-19. This argument proves too much.
 

 The exact same arguments that the state makes with respect to jury instructions could be made with respect
 to other phases of trial, such as the selection and exclusion of jurors during voir dire. See W. Pizzi & M. Hoffman, supra,
 
 38 Am. Crim. L. Rev. 1435
 
 -36. Voir dire also is a collaborative process during which the state, defense counsel, and the trial court work together to select a fair, impartial, and qualified panel, as dictated by the rules of practice. See Practice Book § 42-3 (parties may stipulate as to reduced panel size); Practice Book § 42-4 (giving parties five days to challenge array); Practice Book §§ 42-5, 42-11 through 42-13 (parties and trial court are jointly responsible for selection of qualified panel). Jury selection, as with jury instruction, is a more deliberative process, unlike the trial itself, when defense counsel must make snap judgments as to whether to object to particular testimony or evidence. And yet, we
 have imposed no
 
 Kitchens
 
 -type rule to bar review of unpreserved claims concerning voir dire; nor do we presume that defendants have waived all such challenges. See, e.g.,
 
 State
 
 v.
 
 Mejia
 
 ,
 
 233 Conn. 215
 
 , 231-32,
 
 658 A.2d 571
 
 (1995) ;
 
 State
 
 v.
 
 Baldwin
 
 ,
 
 224 Conn. 347
 
 , 369-70,
 
 618 A.2d 513
 
 (1993) ; but cf.
 
 State
 
 v.
 
 Hodge
 
 ,
 
 248 Conn. 207
 
 , 227,
 
 726 A.2d 531
 
 (unpreserved challenge under
 
 Batson
 
 v.
 
 Kentucky
 
 ,
 
 476 U.S. 79
 
 ,
 
 106 S.Ct. 1712
 
 ,
 
 90 L.Ed.2d 69
 
 [1986], was unreviewable under
 
 Golding
 
 because factual record was inadequate for appellate review), cert. denied,
 
 528 U.S. 969
 
 ,
 
 120 S.Ct. 409
 
 ,
 
 145 L.Ed.2d 319
 
 (1999).
 
 [37]
 
 We also continue to entertain unpreserved claims concerning plea agreements;
 
 State
 
 v.
 
 Das
 
 ,
 
 291 Conn. 356
 
 , 367-68,
 
 968 A.2d 367
 
 (2009) ; and sentencing; see
 
 State
 
 v.
 
 Elson
 
 , supra, 311 Conn. at 740-41,
 
 91 A.3d 862
 
 ; even though those too are more collaborative and less frenetic phases of the criminal justice process during which defense counsel might reasonably be expected
 to have identified and challenged any potential violations of the defendant's constitutional rights. See Practice Book §§ 39-1, 39-3 through 39-5, 39-13 through 39-16 (plea agreements); Practice Book §§ 43-5, 43-7, 43-13 through 43-16 (sentencing). Accordingly, I see no reason that challenges to jury instructions should be distinguished from all other claims of constitutional error as underserving of
 
 Golding
 
 review.
 
 [38]
 

 Lastly, I turn to the argument, advanced by the state and embraced by this court in
 
 Kitchens
 
 , that the
 
 Kitchens
 
 rule does not unfairly penalize criminal defendants for their attorneys' inadvertent failure to object to defective jury instructions because many defendants can obtain relief by filing a habeas action alleging ineffective assistance of counsel. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 482, 496-98,
 
 10 A.3d 942
 
 . I remain unpersuaded. The reasons why a habeas action is not an adequate substitute for appellate review in this context have been fully expounded elsewhere. See, e.g., id., at 523-24,
 
 10 A.3d 942
 
 (
 
 Katz
 
 ,
 
 J.
 
 , concurring); id., at 547-48,
 
 10 A.3d 942
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring); see also L. Cunningham, supra,
 
 11 J. App. Prac. & Process 318
 
 . Suffice it to say that many meritorious claims of serious instructional error will not be subject to correction in habeas actions, and even those petitioners who do ultimately prevail in such actions ordinarily must wait years, while they are wrongfully imprisoned,
 before they can obtain the benefit of such a ruling. Two points, however, do warrant further discussion.
 

 First, with five and one-half years now having passed since we decided
 
 Kitchens
 
 , time and experience have borne out my concerns, and those of Justice Katz, that the majority's reliance on habeas proceedings as a panacea was seriously misplaced. When
 
 Kitchens
 
 was decided, we predicted that the rule would increase rather than
 decrease the burden on judicial resources because any time saved in avoiding appellate review of instructional error would be more than offset by the need for a full habeas trial on the issue. In fact, of the six cases decided in the year following our
 
 Kitchens
 
 decision in which the Appellate Court found claims of instructional error waived under
 
 Kitchens
 
 ,
 
 [39]
 
 four already have resulted in habeas petitions related to the alleged instructional error.
 
 [40]
 

 When
 
 Kitchens
 
 was decided, we also warned that habeas actions would only push back the inevitable, as petitioners whose ineffective assistance of counsel
 claims were denied on collateral review ultimately would return to the Appellate Court for review of those decisions. Sure enough, the first generation of post-
 
 Kitchens
 
 habeas appeals is now coming home to roost. See, e.g.,
 
 Bharrat
 
 v.
 
 Commissioner of Correction
 
 ,
 
 167 Conn.App. 158
 
 ,
 
 143 A.3d 1106
 
 (2016).
 

 In addition, when
 
 Kitchens
 
 was decided, we warned that the vindication of meritorious claims would be unreasonably and unfairly delayed. This prediction was realized in
 
 State
 
 v.
 
 Lahai
 
 ,
 
 128 Conn.App. 448
 
 ,
 
 18 A.3d 630
 
 , cert. denied,
 
 301 Conn. 934
 
 ,
 
 23 A.3d 727
 
 (2011). In that case, the Appellate Court declined to review the unpreserved instructional claim of Juma A. Lahai pursuant to
 
 Kitchens
 
 ; id., at 459-60,
 
 10 A.3d 942
 
 ; even though the state itself conceded that the court's instruction had improperly placed on Lahai the burden of proving self-defense. See id., at 451-52,
 
 10 A.3d 942
 
 . We thereafter denied Lahai's petition for certification to appeal.
 
 State
 
 v.
 
 Lahai
 
 ,
 
 301 Conn. 934
 
 ,
 
 23 A.3d 727
 
 (2011). In May, 2012, the habeas court granted Lahai's habeas petition and vacated his conviction.
 
 Lahai
 
 v.
 
 Warden
 
 , Superior Court, judicial district of Tolland, Docket No. TSR-CV-09-4003028-S (May 7, 2012). Lahai thus remained incarcerated a full year longer than was necessary to review and vindicate his claim.
 
 [41]
 
 In the usual case, an incarcerated defendant will have to wait far longer for his constitutional rights to be vindicated because, ordinarily, the state will appeal from any adverse habeas judgment.
 

 Second, I am troubled by the state's argument that a defendant who is barred by
 
 Kitchens
 
 from raising a claim on appeal, and whose claim is not a candidate
 for habeas relief, has not thereby been treated unfairly because the same incorrect law also may have been applied to other defendants' cases. I would remind the state that the defendant's claim is not that he was treated less favorably than others by the criminal justice system, in violation of his right to equal protection of the law. His claim, rather, is that he was deprived of his fundamental right to due process of law and, possibly, wrongly imprisoned as a result. The fact that other defendants also may have been denied a fair trial will be of little consolation, no more than one who is deprived of the right to practice his religion, or whose land is taken without just compensation, will be content to know that his neighbor was treated with equal injustice.
 

 For all of the foregoing reasons, in the absence of clear evidence that a criminal defendant or defense counsel actually intended to waive a claim that a jury instruction violated the defendant's constitutional rights, I fail to see any reason why this court should insist on treating all such claims as if they had been waived.
 
 [42]
 

 D
 

 The
 
 Kitchens
 
 Rule Can Easily Be Circumvented
 

 As previously discussed, in
 
 Kitchens
 
 , I explained how the
 
 presumption
 
 that a criminal defendant intends to
 waive his right to challenge the jury instructions can be overcome if defense counsel "simply ... inform[s] the trial court that he has not raised a constitutional challenge to the charge
 
 because he is unaware of any such claim
 
 ,
 
 and not because he has elected to waive the claim
 
 ." (Emphasis in original.)
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 541,
 
 10 A.3d 942
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring). I continue to believe that such a statement by defense counsel necessarily would defeat any inference that the defendant has in fact voluntarily waived his right to a properly instructed jury, and I would encourage the defense bar to test this theory.
 

 In
 
 Kitchens
 
 , the majority offered four arguments as to why, in its view, even an express statement that the defendant does not wish to waive any unpreserved instructional claims would be insufficient to overcome the presumption of implied waiver. See
 
 id.,
 
 at 485-88 n.25,
 
 10 A.3d 942
 
 . The majority in the present case reaffirms those arguments. For the reasons that follow, I continue to find the arguments of the majority at best unpersuasive and at worst deeply troubling.
 

 The majority first argues that, if defense counsel is sincere in the statement that she is unaware of any constitutional defects in the court's charge, but such a defect does in fact exist, then counsel is necessarily ineffective and the habeas court provides the appropriate forum to address the problem. See
 
 id.,
 
 at 487 n.25,
 
 10 A.3d 942
 
 . I already have explained why a habeas court
 is not an adequate forum for resolving unpreserved jury instructional claims. More important, the argument that defense counsel who fails to identify any potential defect in a jury charge is ineffective is (1) wholly irrelevant to the issue of whether the defendant should be deemed to have knowingly waived a claim of which he and his counsel are unaware, and (2) contrary to well established law. See
 
 Ledbetter
 
 v.
 
 Commissioner of Correction
 
 ,
 
 275 Conn. 451
 
 , 461-62,
 
 880 A.2d 160
 
 (2005)
 "[C]ounsel's failure to advance novel legal theories or arguments does not constitute ineffective performance. ... Nor is counsel required to change then-existing law to provide effective representation." [Citations omitted; internal quotation marks omitted.] ), cert. denied sub nom.
 
 Ledbetter
 
 v.
 
 Lantz
 
 ,
 
 546 U.S. 1187
 
 ,
 
 126 S.Ct. 1368
 
 ,
 
 164 L.Ed.2d 77
 
 (2006).
 

 The majority in
 
 Kitchens
 
 also asserted that I "cite[d] no legal support [in my concurrence in that case] for a blanket preservation by trial counsel of all constitutional challenges to jury instructions merely on the basis of counsel's in-court statement that he or she is 'unaware' of a constitutional violation."
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 488 n.25,
 
 10 A.3d 942
 
 . If there is no authority that specifically discusses the type of attestation I have described, it is only because no other jurisdiction has followed the lead of this court in
 
 Kitchens
 
 and adopted a novel rule of implied waiver that so clearly departs from established precedent and black letter law. In any event, it is a matter of common sense, as well as a firmly entrenched principle throughout the law, that an express reservation of rights precludes a contrary finding that a party has waived his or her rights by implication. See, e.g.,
 
 RBC Nice Bearings, Inc
 
 . v.
 
 SKF USA, Inc
 
 .,
 
 318 Conn. 737
 
 , 767,
 
 123 A.3d 417
 
 (2015) ;
 
 Connor
 
 v.
 
 Statewide Grievance Committee
 
 ,
 
 260 Conn. 435
 
 , 445,
 
 797 A.2d 1081
 
 (2002) ;
 
 State
 
 v.
 
 Kelley
 
 ,
 
 206 Conn. 323
 
 , 333-35,
 
 537 A.2d 483
 
 (1988) ;
 
 Olean
 
 v.
 
 Treglia
 
 ,
 
 190 Conn. 756
 
 , 772,
 
 463 A.2d 242
 
 (1983) ;
 
 Jones
 
 v.
 
 Civil Service Commission
 
 ,
 
 175 Conn. 504
 
 , 511-12,
 
 400 A.2d 721
 
 (1978) ;
 
 American Woolen Co
 
 . v.
 
 Maaget
 
 ,
 
 86 Conn. 234
 
 , 241,
 
 85 A. 583
 
 (1912).
 

 The majority in
 
 Kitchens
 
 also worried that "such a ploy could open up a 'Pandora's box,' flooding Connecticut courts with cases alleging improper jury instructions on every conceivable issue and making a mockery of the trial court's attempt to query and solicit counsel's
 input on the jury instructions."
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 488 n.25,
 
 10 A.3d 942
 
 . There is no need to panic. What I am advocating is simply that we return to our pre-
 
 Kitchens
 
 jurisprudence, pursuant to which the parties are encouraged to collaborate with the trial court in the drafting of legally accurate jury instructions and a criminal defendant is deemed to have waived a claim when the record suggests that defense counsel was aware of the claim and failed to raise it for reasons of strategy or judgment, but claims of constitutional magnitude are otherwise reviewable under
 
 Golding
 
 . There was no deluge of unpreserved jury instructional claims back then, and there is no reason to fear that there will be one now if counsel merely circumvents the new
 
 Kitchens
 
 rule by honestly attesting that the fictional assumptions on which
 
 Kitchens
 
 relies are untrue in her client's case.
 

 Lastly, the majority in
 
 Kitchens
 
 indicated that such a statement by defense counsel "would conflict directly with the mandate in rule 1.1 of the Rules of Professional Conduct that requires adequate preparation by counsel in representing a client, which presumably would include sufficient familiarity with the jury instructions to identify instructions that are constitutionally flawed."
 
 Id.
 
 The majority in the present case doubles down on this alarming statement, cautioning that "such
 conduct [also] would be inconsistent with our rules of practice, which seek to encourage good faith participation by counsel in the formulation of jury instructions." I find the majority's thinly veiled threats against defense counsel very concerning. It is preposterous to suggest that a commissioner of the Superior Court who, having engaged fully in a charging conference, merely and honestly informs the trial court that (1) she has thoroughly reviewed and considered its draft jury charge, (2) she is not aware of any constitutional defects other than those that she has articulated, but (3) her client does not
 wish to waive any challenges that might later become apparent (if, for instance, a federal court were subsequently to deem one of the instructions unconstitutional), thereby violates the rules of practice and exposes herself to charges of professional misconduct. The majority may, of course, disagree with me as to the legal implications of such an attestation with respect to overcoming the presumption of implied waiver. Under no circumstances, however, is it appropriate for this court to bullyrag a legal professional who, in the course of zealously defending her client, happens to expose the fact that the
 
 Kitchens
 
 emperor has no clothes.
 

 E
 

 Stare Decisis
 

 Lastly, I am not persuaded by the state's argument that stare decisis, or respect for judicial precedent, requires adherence to
 
 Kitchens
 
 . It is well established that "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.)
 
 State
 
 v.
 
 Salamon
 
 ,
 
 287 Conn. 509
 
 , 519,
 
 949 A.2d 1092
 
 (2008). Setting aside the fact that
 
 Kitchens
 
 itself represented a departure from established precedent; see, e.g.,
 
 State
 
 v.
 
 Ebron
 
 , supra, 292 Conn. at 679-82,
 
 975 A.2d 17
 
 ; and is, therefore, less entitled to stare decisis deference; see, e.g.,
 
 Adarand Constructors, Inc
 
 . v.
 
 Pena
 
 ,
 
 515 U.S. 200
 
 , 234-35,
 
 115 S.Ct. 2097
 
 ,
 
 132 L.Ed.2d 158
 
 (1995) ; there are at least three reasons why we are not bound to uphold the
 
 Kitchens
 
 rule.
 

 First, the principal concerns that underlie the respect for judicial precedent-the need for stability and predictability in the law, and the importance of maintaining the institutional legitimacy of the judiciary-are at their nadir in cases such as this one, in which the highest court of a jurisdiction adopts prudential rules to manage
 its own docket and to determine which types of claims it will review. Although the parties read the history of our
 
 Golding
 
 jurisprudence differently, there is no dispute that the rules we have adopted to govern the review of unpreserved claims have evolved over the past several decades as we have sought to balance the various considerations discussed in part I C of this opinion. See generally
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 447,
 
 10 A.3d 942
 
 ;
 
 State
 
 v.
 
 Ebron
 
 , supra, 292 Conn. at 656,
 
 975 A.2d 17
 
 ;
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 233
 
 ,
 
 567 A.2d 823
 
 ;
 
 State
 
 v.
 
 Evans
 
 , supra,
 
 165 Conn. at 61
 
 ,
 
 327 A.2d 576
 
 . These considerations include (1) securing the fundamental constitutional rights of criminal defendants, (2) maintaining an orderly trial process in which potential errors are identified and remedied in a timely manner, (3) disposing of meritless appellate claims as efficiently as possible, (4) treating with fairness both the trial court and the state, and (5) providing an opportunity for appellate courts to clarify and develop the law outside the "the hurried and ... hectic process of trial ...."
 
 People
 
 v.
 
 Ladas
 
 , supra,
 
 12 Ill.2d at 294
 
 ,
 
 146 N.E.2d 57
 
 . The legislative and executive branches of government, which have their own considerations to balance, routinely and appropriately tweak their practices and procedures
 so as to best manage their affairs and conduct the business of the people.
 
 Kitchens
 
 is of the same ilk, and there is no reason why our commitment to maintaining stability and predictability in the law should require that, as an institution of government, we bind ourselves to unserviceable rules of procedure. Like the political branches, this court must have the freedom and flexibility not only to experiment with new procedures, but also to set such experiments aside when time and experience have proven them to be unworkable and ill conceived.
 

 The second reason stare decisis does not require that we retain the
 
 Kitchens
 
 rule is because there are no reliance interests that would justify the retention of
 that rule in the face of its evident deficiencies. The only conceivable detrimental reliance on
 
 Kitchens
 
 would occur if the state, in other cases presently on appeal, had opted not to respond to appellants' unpreserved claims of instructional error on the merits and instead argued only that those claims were waived under
 
 Kitchens
 
 . If there are examples of this sort of reliance, any unfairness may be remedied simply by affording the state an additional opportunity to brief the unpreserved claims on the merits (or to argue that the claims are unreviewable on a ground unrelated to the
 
 Kitchens
 
 rule).
 

 Third, and most important, we are not bound to retain the
 
 Kitchens
 
 rule because not only was
 
 Kitchens
 
 wrongly decided in a such a way as to work a manifest injustice on criminal defendants whose constitutional rights have been violated and who had no intention of waiving those rights, but the rule also does irreparable damage to our broader waiver jurisprudence. As I explained in part I B of this opinion, the concept of waiver is fundamental not only in the context of criminal procedure but in virtually every area of the law. By muddying the concept in
 
 Kitchens
 
 , and by further confusing the issue in the present case, the majority risks infecting broad swaths of the law that rely on a clear and cogent distinction between waiver and forfeiture. Ultimately, in continuing to add epicycles to
 
 Kitchens
 
 in an attempt to salvage its flawed implied waiver theory, the majority itself implicitly acknowledges that the case is devoid of any precedential value.
 

 II
 

 THE DEFENDANT'S CLAIM IS UNREVIEWABLE
 

 Applying the foregoing principles to the present case, I would conclude, contrary to the majority, that defense counsel did not implicitly waive the jury instruction claims that the defendant raises on appeal. There is
 absolutely no indication in the record that defense counsel was aware of the alleged errors but declined to object to them for strategic or other reasons. I agree with the defendant that there is no conceivable reason why, in a case that hinged on a contested eyewitness identification, it would have been beneficial to him not to seek a jury instruction that fully and accurately stated the considerations that might have called the reliability of the eyewitness testimony into doubt. Nor is there any indication, let alone unequivocal evidence, that defense counsel intended to waive the defendant's procedural right to raise such claims on appeal. Accordingly, the state has failed to meet its burden of proving that defense counsel, or the defendant himself, knowingly and voluntarily waived the claims at issue in this appeal.
 

 Although I do not believe that the defendant's unpreserved jury instruction claims were waived or induced, I nevertheless agree with the state that they are unreviewable under
 
 Golding
 
 . The defendant's claims are that the trial court, in drafting its instructions with respect to eyewitness identification, incorporated certain of the Judicial Branch's standard
 criminal jury instructions that favored the state but omitted those standard instructions that would have supported a defense of misidentification. It is well established, however, that a trial court's failure to give appropriate eyewitness misidentification instructions "is at most [an instance] of instructional error rather than of constitutional error."
 
 State
 
 v.
 
 Cerilli
 
 ,
 
 222 Conn. 556
 
 , 567,
 
 610 A.2d 1130
 
 (1992) ; see also
 
 State
 
 v.
 
 Dixon
 
 ,
 
 318 Conn. 495
 
 , 501 n.3,
 
 122 A.3d 542
 
 (2015) (claim regarding instructions on eyewitness identification is not of constitutional magnitude). Accordingly, because
 
 Golding
 
 review is not available for nonconstitutional claims, I respectfully concur in the judgment.
 

 Under
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 239-40
 
 ,
 
 567 A.2d 823
 
 , a criminal defendant can prevail on an unpreserved claim of constitutional error if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation ... exists and ... deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) See also
 
 In re Yasiel R.
 
 ,
 
 317 Conn. 773
 
 , 781,
 
 120 A.3d 1188
 
 (2015) (modifying third prong of
 
 Golding
 
 ).
 

 See, e.g.,
 
 State
 
 v.
 
 Cerilli
 
 ,
 
 222 Conn. 556
 
 , 567,
 
 610 A.2d 1130
 
 (1992) (claim that court should have charged jury on issue of identification is one of instructional, not constitutional error); see also
 
 State
 
 v.
 
 Inglis
 
 ,
 
 151 Conn.App. 283
 
 , 289,
 
 94 A.3d 1204
 
 ("[c]laims pertaining to the adequacy of a court's instructions on misidentification are not constitutional in nature"), cert. denied,
 
 314 Conn. 920
 
 ,
 
 100 A.3d 851
 
 (2014).
 

 The difference between a waiver and a forfeiture is that a "forfeiture is the failure to make the timely assertion of a right," whereas a "waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.)
 
 United States
 
 v.
 
 Olano
 
 ,
 
 507 U.S. 725
 
 , 733,
 
 113 S.Ct. 1770
 
 ,
 
 123 L.Ed.2d 508
 
 (1993) ; see also
 
 Mozell
 
 v.
 
 Commissioner of Correction
 
 ,
 
 291 Conn. 62
 
 , 70-71,
 
 967 A.2d 41
 
 (2009). Federal courts variously have characterized forfeitures as "more inadvertent" than waivers;
 
 Freytag
 
 v.
 
 Commissioner of Internal Revenue
 
 ,
 
 501 U.S. 868
 
 , 894 n.2,
 
 111 S.Ct. 2631
 
 ,
 
 115 L.Ed.2d 764
 
 (1991) (Scalia, J, dissenting); as "accidental blunder[s]";
 
 United States
 
 v.
 
 Hamilton
 
 ,
 
 499 F.3d 734
 
 , 735 (7th Cir. 2007), cert. denied,
 
 552 U.S. 1129
 
 ,
 
 128 S.Ct. 951
 
 ,
 
 169 L.Ed.2d 782
 
 (2008) ; or as "matter[s] of oversight ...."
 
 United States
 
 v.
 
 Yu
 

 -
 

 Leung
 
 ,
 
 51 F.3d 1116
 
 , 1122 (2d Cir. 1995).
 

 "When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.)
 
 Mozell
 
 v.
 
 Commissioner of Correction
 
 ,
 
 291 Conn. 62
 
 , 71,
 
 967 A.2d 41
 
 (2009). On the other hand, as we acknowledged in
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 474,
 
 10 A.3d 942
 
 , mere forfeiture "is not a bar to appellate review of an unpreserved
 
 Golding
 
 claim but, rather, the precise reason why such review is permissible."
 

 "Under the two-pronged [test of
 
 Strickland
 
 v.
 
 Washington
 
 ,
 
 466 U.S. 668
 
 , 687-94,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984) ], a defendant can only prevail on an ineffective assistance of counsel claim if he proves that (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice. ... To demonstrate deficient performance, a defendant must show that counsel's conduct fell below an objective standard of reasonableness for competent attorneys. ... To demonstrate actual prejudice, a defendant must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors." (Citations omitted.)
 
 Davis
 
 v.
 
 Commissioner of Correction
 
 ,
 
 319 Conn. 548
 
 , 555,
 
 126 A.3d 538
 
 (2015).
 

 This court has yet to clarify whether a claim that is deemed waived pursuant to
 
 Kitchens
 
 nevertheless is subject to review on direct appeal under the plain error doctrine. See
 
 State
 
 v.
 
 McClain
 
 ,
 
 319 Conn. 902
 
 ,
 
 122 A.3d 637
 
 (2015) (This court granted certification to appeal, limited to the following question: "Did the Appellate Court properly determine that an implied waiver of a claim of instructional error that satisfies
 
 State
 
 v.
 
 Kitchens
 
 , [supra, 299 Conn. at 447,
 
 10 A.3d 942
 
 ], also forecloses plain error review?"). Even in the event that we ultimately hold that such review remains available, however, it seems clear that, under the stringent standard governing claims of plain error, defendants raising such claims would be less likely to prevail under that framework than they would have been under the
 
 Golding
 
 standard. See
 
 State
 
 v.
 
 Myers
 
 ,
 
 290 Conn. 278
 
 , 289,
 
 963 A.2d 11
 
 (2009) (explaining that plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party ... [and] is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted] ). Moreover, novel claims or those requiring the overruling of existing jurisprudence also are unlikely to succeed under this rule, because "[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine." (Internal quotation marks omitted.)
 
 State
 
 v.
 
 Darryl W.
 
 ,
 
 303 Conn. 353
 
 , 374,
 
 33 A.3d 239
 
 (2012).
 

 A search of Connecticut appellate jurisprudence postdating
 
 Kitchens
 
 , encompassing a period of approximately five years, returns more than forty cases applying its holding, with varying results.
 

 For this reason, applying
 
 Kitchens
 
 is akin to playing a game of slow-motion, jurisprudential "whack-a-mole." The reviewing court considering the defendant's direct appeal may slap down an unpreserved instructional claim as waived, and therefore unreviewable, today, only to have the claim pop up anew in a habeas court elsewhere in the state in the future.
 

 As this court discussed in
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 477-80,
 
 10 A.3d 942
 
 , some cases have held claims of instructional error to have been waived impliedly by conduct, even in the absence of an overt agreement to the instruction at issue.
 

 See
 
 State
 
 v.
 
 Hampton
 
 ,
 
 293 Conn. 435
 
 , 449-50,
 
 978 A.2d 1089
 
 (2009) (defendant waived claim pertaining to unanimity aspect of sexual assault charge when trial court twice highlighted unanimity issue in charge conferences and defense counsel thereafter expressed approval of charge);
 
 State
 
 v.
 
 Brewer
 
 ,
 
 283 Conn. 352
 
 , 357 n.7, 361,
 
 927 A.2d 825
 
 (2007) (defendant waived claim pertaining to unanimous acquittal aspect of lesser included offense instruction by expressly approving lesser included offense instruction after discussion regarding its necessity);
 
 State
 
 v.
 
 Fabricatore
 
 ,
 
 281 Conn. 469
 
 , 475, 481,
 
 915 A.2d 872
 
 (2007) (defendant waived claim pertaining to duty to retreat aspect of self-defense instruction by, inter alia, expressing satisfaction with self-defense instruction after discussion about it);
 
 State
 
 v.
 
 Hankerson
 
 ,
 
 118 Conn.App. 380
 
 , 386-87, 389,
 
 983 A.2d 898
 
 (2009) (defendant waived claim pertaining to causation aspect of felony murder instruction by expressly approving felony murder instruction after discussion of it), cert. denied,
 
 298 Conn. 932
 
 ,
 
 10 A.3d 518
 
 (2010) ;
 
 State
 
 v.
 
 Collazo
 
 ,
 
 115 Conn.App. 752
 
 , 760,
 
 974 A.2d 729
 
 (2009) (defendant waived objection to instructing jury that he could be convicted as either principal or accessory when that approach was discussed and counsel agreed to it), cert. denied,
 
 294 Conn. 929
 
 ,
 
 986 A.2d 1057
 
 (2010) ;
 
 State
 
 v.
 
 Velez
 
 ,
 
 113 Conn.App. 347
 
 , 360-61,
 
 966 A.2d 743
 
 (defendant waived claim pertaining to supplemental intent instruction by discussing instruction with court then agreeing twice to that instruction), cert. denied,
 
 291 Conn. 917
 
 ,
 
 970 A.2d 729
 
 (2009) ;
 
 State
 
 v.
 
 Khuth
 
 ,
 
 111 Conn.App. 184
 
 , 192-93,
 
 958 A.2d 218
 
 (defendant waived claim pertaining to definition of "aided," when he specifically agreed with definition given by court and objected to any alteration of it in response to jury query), cert. denied,
 
 289 Conn. 957
 
 ,
 
 961 A.2d 423
 
 (2008) ;
 
 State
 
 v.
 
 Diaz
 
 ,
 
 109 Conn.App. 519
 
 , 536-37,
 
 952 A.2d 124
 
 (defendant waived claim pertaining to instruction addressing missing evidence when, following extended colloquy between court and counsel, he affirmatively expressed consent to that instruction), cert. denied,
 
 289 Conn. 930
 
 ,
 
 958 A.2d 161
 
 (2008) ; compare
 
 State
 
 v.
 
 Rodriguez
 

 -
 

 Roman
 
 ,
 
 297 Conn. 66
 
 , 86-87,
 
 3 A.3d 783
 
 (2010) (defendant did not waive claim pertaining to racketeering instruction when, following brief discussion, counsel expressed satisfaction with conspiracy instruction);
 
 State
 
 v.
 
 Reynolds
 
 ,
 
 118 Conn.App. 278
 
 , 307,
 
 983 A.2d 874
 
 (2009) (defendant did not waive claim pertaining to consent instruction by assenting generally, or specifically to other parts of charge), cert. denied,
 
 294 Conn. 933
 
 ,
 
 987 A.2d 1029
 
 (2010).
 

 In light of the weight of this authority, I am not persuaded by the majority's contention that, "[e]ven before our decision in
 
 Kitchens
 
 , Connecticut law provided that approval of the jury instructions by trial counsel acts as a waiver of
 
 all
 
 potential jury instruction claims and not merely claims arising from jury instructions that defense counsel specifically discussed on the record at trial." (Emphasis in original.) Specifically, neither of the two cases cited as authority for that proposition appear to support it, because in each case, the particular instruction at issue on appeal
 
 was
 
 discussed and accepted by trial counsel on the record. See
 
 State
 
 v.
 
 Holness
 
 ,
 
 289 Conn. 535
 
 , 541-44,
 
 958 A.2d 754
 
 (2008) (defendant waived claim that he was cross-examined in violation of his right to confrontation, using information from statement of unavailable witness, by counsel's requesting, then agreeing to, cautionary instruction as remedy); see also
 
 State
 
 v.
 
 Brewer
 
 , supra,
 
 283 Conn. at
 
 357 n.7,
 
 927 A.2d 825
 
 (defendant waived claim pertaining to unanimous acquittal aspect of lesser included offense instruction by expressly approving instruction after discussion regarding its necessity).
 

 The nature and degree of focus may have varied, but, at a minimum, there was an actual substantive discussion of the instruction at issue that indicates that counsel truly was thinking about that instruction. In contrast, a rote call and response exercise, pursuant to which a trial court reads through a proposed jury charge on the record, pausing after each instruction to secure counsel's agreement therewith, would not result in an implied waiver of claims of error as to each approved instruction, absent additional, meaningful discussion of the contents of an instruction.
 

 This is not to say that, in all cases in which a focused discussion occurs, an implied waiver inevitably will be found. For example, the specific instruction at issue may be lengthy or complex, counsel may not have had much time to review it, and the on-the-record discussion may have been limited to an isolated aspect of the instruction. Under the totality of those circumstances, inferring waiver of a claim pertaining to an entirely different portion of the instruction would not be reasonable.
 

 See, e.g.,
 
 United States
 
 v.
 
 Polouizzi
 
 ,
 
 564 F.3d 142
 
 , 148, 153 (2d Cir. 2009) (defendant waived claim of error pertaining to definition of "wrongfulness" when he agreed to definition proposed by court);
 
 United States
 
 v.
 
 Sanders
 
 ,
 
 520 F.3d 699
 
 , 702 (7th Cir. 2008) (defendant waived claim pertaining to adequacy of supplemental instruction by explicitly approving that instruction); compare
 
 United States
 
 v.
 
 Hamilton
 
 ,
 
 499 F.3d 734
 
 , 736 (7th Cir. 2007) (defendant did not waive claim pertaining to intent instruction where judge did not query defense counsel specifically about that instruction or ask whether he agreed to it), cert. denied,
 
 552 U.S. 1129
 
 ,
 
 128 S.Ct. 951
 
 ,
 
 169 L.Ed.2d 782
 
 (2008).
 

 In the federal courts, unpreserved claims of trial error that have not been waived are reviewable pursuant to rule 52 (b) of the Federal Rules of Criminal Procedure, which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the [District] [C]ourt's attention." The United States Supreme Court has articulated a four-pronged rule to determine whether rule 52 (b) review will be afforded: "First, there must be an error or defect-some sort of [d]eviation from a legal rule-
 
 that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant
 
 .... Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. ... Third, the error must have affected the appellant's substantial rights .... Fourth ... if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error-discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (Citations omitted; emphasis altered; internal quotation marks omitted.)
 
 Puckett
 
 v.
 
 United States
 
 ,
 
 556 U.S. 129
 
 , 135,
 
 129 S.Ct. 1423
 
 ,
 
 173 L.Ed.2d 266
 
 (2009). As the foregoing test indicates, federal plain error review differs from Connecticut's highly restrictive plain error doctrine; see footnote 6 of this concurring opinion; and is more closely analogous to this state's
 
 Golding
 
 review.
 

 I disagree with the majority that it is appropriate to have fewer jury instructional claims reviewable under our state waiver rule than under federal waiver doctrine, because relief for a proven violation is more automatic under
 
 Golding
 
 than under federal plain error review, which provides for discretionary relief. It is axiomatic that
 
 Golding
 
 review is limited to claims of constitutional magnitude, whereas federal plain error review is available for nonconstitutional claims as well. Accordingly, it stands to reason that more automatic relief should follow under
 
 Golding
 
 , because it necessarily will apply to a smaller universe of more egregious claims.
 

 Our case law permits juries to draw reasonable and logical inferences from the evidence presented at trial, and disallows them from engaging in speculation and conjecture.
 
 State
 
 v.
 
 Morrill
 
 ,
 
 193 Conn. 602
 
 , 608,
 
 478 A.2d 994
 
 (1984). I believe that appellate courts should operate within the same parameters. It does not reasonably and logically follow from defense counsel's global review of a set of jury instructions, and general consent thereto, that he or she was aware of all potential flaws in the instructions and decided to disregard them. Conversely, when defense counsel's attention is drawn to a specific instruction, and he or she thereafter expresses satisfaction with that instruction, an inference that counsel agreed to the instruction, despite knowledge of some irregularity in it, is a much more reasonable inference.
 

 Relatedly, I disagree with the majority that implying a broad waiver of claims of instructional error, both known and unknown, pursuant to
 
 Kitchens
 
 is analogous to a defendant's abandonment of various claims in connection with his or her waiver of other constitutional rights, specifically, the rights to a trial, counsel or a probable cause hearing. In each of the latter three instances, a criminal defendant overtly and consciously chooses to relinquish claims, known or unknown, in exchange for something he or she values-a favorable plea, the right to self-representation or a strategic advantage, respectively. This is unquestionably true, notwithstanding the majority's assessment of the benefit received, in the case of a waiver of counsel, as negligible, or its focus on what a defendant subject to a
 
 Kitchens
 
 waiver retains rather than on that which he or she has forfeited. In contrast, with an
 
 implied
 
 waiver pursuant to
 
 Kitchens
 
 , the defendant is
 
 presumed
 
 , by operation of law, to have abandoned a valuable right to appeal, not in exchange for something, but by merely agreeing to the proposed jury instructions. In my view, when a waiver is to be implied from circumstances and is not the result of any conscious quid pro quo, the scope of that waiver should be restrictive rather than broad.
 

 Conceivably, in a particular case, counsel may agree with a specific jury instruction, after discussion of that instruction with the trial court, yet still be unaware of a defect therein. In such an instance, a claim relating to that defect, although deemed waived on appeal, in actuality was only forfeited. Even under those circumstances, however, I do not believe that it is fundamentally unfair to deny direct appellate review of the claim pursuant to
 
 Golding
 
 , particularly in light of the competing consideration of avoiding an ambuscade of the trial court and opposing counsel. As we explained in
 
 Kitchens
 
 , there are features unique to jury instructions that justify holding counsel to a higher standard of accountability for failing to preserve claims of error. See
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 482-85,
 
 10 A.3d 942
 
 . Specifically, jury instructions are carefully formulated outside of the rush of trial pursuant to the rules of practice that afford counsel a large degree of participation in a structured process. The purpose of these rules is to detect error at the earliest possible juncture, and the threat of an implied waiver of an instructional claim on appeal, at least in narrowly defined circumstances, provides an appropriate incentive for the opportunity to be taken seriously. See id., at 495-96,
 
 128 A.3d 492
 
 .
 

 The detection of error at trial, without the necessity of an appeal, is the most desirable outcome for purposes of both fairness to defendants and the efficient operation of the court system. "Waiver is based on the principle that [c]ontemporaneous objection gives the trial court the opportunity to correct its own errors and thereby avoids unnecessary delays through appeals, reversals, and new trials." (Internal quotation marks omitted. )
 
 In re Eternity E.
 
 , Docket Nos. 01-2009, 01-2010,
 
 2001 WL 1313822
 
 , at *3,
 
 248 Wis.2d 985
 
 ,
 
 638 N.W.2d 395
 
 (Wis. App. October 25, 2001) (decision without published opinion,
 
 248 Wis.2d 985
 
 ,
 
 638 N.W.2d 395
 
 [2001] ), review denied,
 
 250 Wis.2d 559
 
 ,
 
 643 N.W.2d 96
 
 (2002). "Moreover, [a] waiver rule encourages attorneys to diligently prepare their cases for trial ... and discourages the strategy of building in errors to ensure a new trial in the event of a guilty verdict." (Citation omitted.)
 
 State
 
 v.
 
 Lucas
 
 , Docket No. 92-0477-CR,
 
 178 Wis.2d 875
 
 ,
 
 506 N.W.2d 426
 
 ,
 
 1993 WL 322517
 
 , at *6 (Wis. App. August 26, 1993) (decision without published opinion,
 
 178 Wis.2d 875
 
 ,
 
 506 N.W.2d 426
 
 [1993] ). In short, requiring claims of error first to have been presented to a trial court "reflects a policy of encouraging the efficient use of judicial resources."
 
 Ericson
 
 v.
 
 King
 
 , Docket No. 60327-2-I,
 
 2008 WL 2955872
 
 , at *2,
 
 146 Wash.App. 1023
 
 , ---- (Wn. App. Aug. 4, 2008) (decision without published opinion,
 
 146 Wash.App. 1023
 
 [2008] ).
 

 The trial court stated: "With respect to identification, I did give an identification section in the charge which outlines on page 14 what the jury must be satisfied in making the identification including some of the factors they can consider in this evidence. However, I'm going to expand that language to include the language to the effect that in every criminal prosecution, it is the state's responsibility to show that the defendant is the person who committed the offense and if they are not satisfied of that evidence then they cannot find the defendant guilty of any particular offense. I'm going to highlight that because obviously that is an issue in this case."
 

 See part I A of this opinion.
 

 State
 
 v.
 
 Golding
 
 ,
 
 213 Conn. 233
 
 ,
 
 567 A.2d 823
 
 (1989).
 
 Golding
 
 , which defines the conditions under which a criminal defendant may prevail on an unpreserved claim of constitutional error, represents an exception to the general rule that objections not timely raised at trial will be deemed forfeited and, therefore, unreviewable on appeal. See id., at 239-40,
 
 567 A.2d 823
 
 .
 

 "The distinction between a forfeiture of a right ... and a waiver of that right ... is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.)
 
 Mozell
 
 v.
 
 Commissioner of Correction
 
 ,
 
 291 Conn. 62
 
 , 70-71,
 
 967 A.2d 41
 
 (2009) ; accord
 
 United States
 
 v.
 
 Olano
 
 ,
 
 507 U.S. 725
 
 , 733,
 
 113 S.Ct. 1770
 
 ,
 
 123 L.Ed.2d 508
 
 (1993). Forfeiture thus occurs as a matter of course if an objection is not timely raised, whereas waiver requires an actual informed decision not to press the right. Although we have not always used these terms with the appropriate precision, our
 
 Golding
 
 jurisprudence is premised on the distinction between them. Specifically, we long have held that, whereas most claims of error that are not timely raised at trial are deemed to be forfeited and, thus, not reviewable on appeal, unpreserved claims of constitutional magnitude are reviewable, assuming all of the
 
 Golding
 
 requirements are satisfied, unless the defendant or defense counsel voluntarily chooses to waive them. See, e.g.,
 
 Mozell
 
 v.
 
 Commissioner of Correction
 
 , supra, at 70-71,
 
 967 A.2d 41
 
 ; see also
 
 State
 
 v.
 
 Davis
 
 ,
 
 311 Conn. 468
 
 , 503-504,
 
 88 A.3d 445
 
 (2014) (
 
 Palmer
 
 ,
 
 J.
 
 , concurring).
 

 See, e.g.,
 
 State
 
 v.
 
 Fabricatore
 
 ,
 
 281 Conn. 469
 
 , 471,
 
 915 A.2d 872
 
 (2007) ; see also
 
 State
 
 v.
 
 Charles
 
 ,
 
 134 Conn.App. 242
 
 , 244,
 
 39 A.3d 750
 
 , cert. denied,
 
 304 Conn. 930
 
 ,
 
 42 A.3d 392
 
 (2012) ;
 
 State
 
 v.
 
 Diaz
 
 ,
 
 109 Conn.App. 519
 
 , 535,
 
 952 A.2d 124
 
 , cert. denied,
 
 289 Conn. 930
 
 ,
 
 958 A.2d 161
 
 (2008).
 
 Fabricatore
 
 defies easy classification. Although we began that decision by identifying the case as one of express waiver;
 
 State
 
 v.
 
 Fabricatore
 
 , supra, at 471,
 
 915 A.2d 872
 
 ; later in the decision, we suggested that it presented a question of implied waiver; id., at 478,
 
 915 A.2d 872
 
 ; and we also likened the claim to induced error. Id., at 482-83,
 
 915 A.2d 872
 
 .
 

 See, e.g.,
 
 State
 
 v.
 
 Hampton
 
 ,
 
 293 Conn. 435
 
 , 445-50,
 
 978 A.2d 1089
 
 (2009) (defense counsel was clearly aware of defect subsequently raised on appeal when trial court twice raised with counsel question whether unanimity instruction was required);
 
 State
 
 v.
 
 Whitford
 
 ,
 
 260 Conn. 610
 
 , 631-34,
 
 799 A.2d 1034
 
 (2002) (challenge was waived when defense counsel raised same objection at trial and accepted trial court's curative instruction);
 
 State
 
 v.
 
 Jones
 
 ,
 
 193 Conn. 70
 
 , 85-89,
 
 475 A.2d 1087
 
 (1984) (challenge was waived when trial counsel excepted to charge later challenged on appeal and also participated in fashioning supplementary charge to cure error). The contention by the majority that in none of these cases was trial counsel aware of the defect that subsequently was challenged on appeal is patently false and borders on disingenuous. See footnote 27 of the majority opinion.
 

 See, e.g.,
 
 State
 
 v.
 
 Fuller
 
 ,
 
 158 Conn.App. 378
 
 , 394-98,
 
 119 A.3d 589
 
 (2015) (defendant claimed on appeal that trial court should have given misidentification instruction, even though such instruction would have contradicted and undermined his trial theory that he was present at scene of crime but was legally in possession of allegedly stolen items); see also
 
 United States
 
 v.
 
 Crowley
 
 ,
 
 318 F.3d 401
 
 , 411 (2d Cir.) ("[the defendant's] failure even to raise the issue suggests a reasonable strategic choice that the defense was better off arguing that [he] never had a criminal intent, rather than making the argument-novel in federal law, and perhaps lacking in jury appeal-that he began with a criminal purpose but abandoned it"), cert. denied,
 
 540 U.S. 894
 
 ,
 
 124 S.Ct. 239
 
 ,
 
 157 L.Ed.2d 171
 
 (2003). In arguing that reverting to the traditional, pre-
 
 Kitchens
 
 definition of implied waiver would "eviscerate" the concept of implied waiver; footnote 27 of the majority opinion; or narrow it to the point of abolition, the majority thus ignores the existence of cases such as
 
 Hampton
 
 ,
 
 Whitford
 
 ,
 
 Jones
 
 , and
 
 Fuller
 
 , each of which relied on and exemplifies the concept. See footnotes 5 and 6 of this opinion. Of course, there will be fewer instances of implied waiver under the traditional definition than under
 
 Kitchens
 
 ' dramatically expanded definition. But that is as it should be. In many areas of the law, we require that an individual
 
 expressly
 
 declare his intent to waive his fundamental constitutional rights, and, when we relax that strict requirement, we should be in no great hurry to find waiver by implication.
 

 See, e.g.,
 
 State
 
 v.
 
 Coward
 
 ,
 
 292 Conn. 296
 
 , 305-306,
 
 972 A.2d 691
 
 (2009) ;
 
 State
 
 v.
 
 Cruz
 
 ,
 
 269 Conn. 97
 
 , 102, 105,
 
 848 A.2d 445
 
 (2004).
 

 See, e.g.,
 
 State
 
 v.
 
 Foster
 
 ,
 
 293 Conn. 327
 
 , 340-42,
 
 977 A.2d 199
 
 (2009) ;
 
 State
 
 v.
 
 Holness
 
 ,
 
 289 Conn. 535
 
 , 541-45,
 
 958 A.2d 754
 
 (2008) ;
 
 State
 
 v.
 
 Brewer
 
 ,
 
 283 Conn. 352
 
 , 355, 357 n.7, 360-61,
 
 927 A.2d 825
 
 (2007) ;
 
 State
 
 v.
 
 Fabricatore
 
 ,
 
 281 Conn. 469
 
 , 475,
 
 915 A.2d 872
 
 (2007) ; see also
 
 State
 
 v.
 
 Gibson
 
 ,
 
 270 Conn. 55
 
 , 66-68,
 
 850 A.2d 1040
 
 (2004) (finding induced error when defense counsel declined limiting instruction offered by court). The majority contends that
 
 Brewer
 
 was not a case of induced or invited error but, instead, stands for a broad implied waiver rule. See footnote 13 of the majority opinion. It is clear, however, that, in
 
 Brewer
 
 , we relied not only on the fact that defense counsel in that case expressed satisfaction with the challenged lesser included offense instruction, but also that he specifically requested such an instruction and then verified that the instruction as given-presumably including the challenged section on unanimity-was what he had sought. See
 
 State
 
 v.
 
 Brewer
 
 , supra, at 357 and n.7,
 
 927 A.2d 825
 
 . For that reason, in
 
 State
 
 v.
 
 Ebron
 
 ,
 
 292 Conn. 656
 
 ,
 
 975 A.2d 17
 
 (2009), overruled in part on other grounds by
 
 State
 
 v.
 
 Kitchens
 
 ,
 
 299 Conn. 447
 
 ,
 
 10 A.3d 942
 
 (2011), we held
 
 Brewer
 
 up as a case of induced error. See
 
 State
 
 v.
 
 Ebron
 
 , supra, at 681,
 
 975 A.2d 17
 
 (noting that, in
 
 Brewer
 
 , "[the] defendant could not prevail under [the] third prong of
 
 Golding
 
 when he affirmatively requested exact lesser included offense instruction challenged on appeal and expressed satisfaction with that charge"). The same can be said of
 
 Holness
 
 , in which defense counsel requested and then specifically approved the language of the limiting instruction at issue. See id., at 681,
 
 975 A.2d 17
 
 .
 

 See, e.g.,
 
 State
 
 v.
 
 Cooper
 
 ,
 
 38 Conn.App. 661
 
 , 670,
 
 664 A.2d 773
 
 , cert. denied,
 
 235 Conn. 908
 
 ,
 
 665 A.2d 903
 
 (1995), cert. denied,
 
 517 U.S. 1214
 
 ,
 
 116 S.Ct. 1837
 
 ,
 
 134 L.Ed.2d 940
 
 (1996).
 

 The majority is, therefore, incorrect when it contends that the rationales underlying the two rules are the same and that the doctrine of induced error, no less than
 
 Kitchens
 
 ' expansive implied waiver rule, is predicated on a legal fiction. It is true that the induced error doctrine assumes that the defendant has made a strategic choice and that it holds him to the consequences of that choice. But there is no fiction therein-requesting a particular jury instruction is necessarily an exercise of trial strategy, regardless of the reason or purpose for the request-and we have made a policy determination that
 
 Golding
 
 review should not be available if the defendant later second-guesses that strategy and seeks to attack his own proposed instructions. The court in
 
 Kitchens
 
 likewise could have carved out for policy reasons a broader exception to
 
 Golding
 
 review for unpreserved jury instruction challenges when defense counsel merely acquiesces in the trial court's instructions. Its primary misstep was that, rather than being seen as further scaling back on
 
 Golding
 
 review, the
 
 Kitchens
 
 majority tried to piggyback on the doctrine of waiver by improperly labeling as implied waiver conduct that (1) often is not at all strategic, and (2) satisfies none of the criteria for a knowing, voluntary relinquishment of a fundamental right. The irony-and the fundamental slight-of-hand in
 
 Kitchens
 
 -is that it is precisely those elements of a true waiver, which exempt it from
 
 Golding
 
 review, that are lacking in a so-called
 
 Kitchens
 
 waiver.
 

 "The doctrine of judicial estoppel ... advances notions of fair play by precluding a party from inducing judicial action by taking one legal position and then taking a contrary position later to achieve further advantage over the same adverse party."
 
 State
 
 v.
 
 Hargrove
 
 ,
 
 48 Kan.App.2d 522
 
 , 548-49,
 
 293 P.3d 787
 
 (2013).
 

 See, e.g.,
 
 State
 
 v.
 
 Rodriguez
 

 -
 

 Roman
 
 ,
 
 297 Conn. 66
 
 , 86,
 
 3 A.3d 783
 
 (2010) (unpreserved instructional claim was reviewable when "defense counsel generally acquiesced in the jury instructions but did not affirmatively request the instruction");
 
 State
 
 v.
 
 Ebron
 
 ,
 
 292 Conn. 656
 
 , 680,
 
 975 A.2d 17
 
 (2009) (claim was reviewable "because the defendant, while acquiescing to the charge as given at trial, did not actively induce the trial court to act on the challenged portion of the instruction"), overruled in part by
 
 State
 
 v.
 
 Kitchens
 
 ,
 
 299 Conn. 447
 
 ,
 
 10 A.3d 942
 
 (2011) ;
 
 State
 
 v.
 
 Madigosky
 
 ,
 
 291 Conn. 28
 
 , 35 n.7,
 
 966 A.2d 730
 
 (2009) ( "[t]here was no induced instructional error ... because the defendant had not submitted a request to charge or suggested any instructional language" [internal quotation marks omitted] );
 
 State
 
 v.
 
 Griggs
 
 ,
 
 288 Conn. 116
 
 , 126-27 n.13,
 
 951 A.2d 531
 
 (2008) (mere acquiescence does not bar
 
 Golding
 
 review); see also
 
 State
 
 v.
 
 Williams
 
 ,
 
 202 Conn. 349
 
 , 363,
 
 521 A.2d 150
 
 (1987) ("[t]his court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial").
 

 For this reason, the majority is simply incorrect when it contends that overruling
 
 Kitchens
 
 also would require that we overrule those decisions. Each of those decisions was properly decided under our long-standing, pre-
 
 Kitchens
 
 implied waiver jurisprudence.
 

 I recognize that, prior to
 
 Kitchens
 
 , the Appellate Court in certain instances found that unpreserved claims of jury instruction error had been waived solely on the basis of defense counsel's acquiescence in the trial court's draft charge. The Appellate Court reached that result, however, only because it, like the majority in
 
 Kitchens
 
 , relied on cases such as
 
 State
 
 v.
 
 Cooper
 
 , supra,
 
 38 Conn.App. at 661
 
 ,
 
 664 A.2d 773
 
 , without recognizing that those cases require something beyond mere acquiescence before a court may find that a defendant has waived his right to a properly instructed jury.
 

 Curiously, the majority notes that it is "not aware of any case in which a reviewing court has construed 'affirmative acceptance' as meaning passive acquiescence," and yet it declines to address any of these cases, none of which appears to contain even a whiff of affirmative acceptance.
 

 The notion that
 
 Kitchens
 
 cases are so fact dependent that no guidance can be provided is a red herring. In many instances, the trial court record reveals only that, when given the opportunity to object to any of the court's instructions, defense counsel merely indicates that she has no objections, that the instructions are acceptable or okay, or something to that effect. There is absolutely no reason why this court cannot and should not offer litigants and reviewing courts general guidance as to which "magic words" will result in waiver in those circumstances, and which will allow the defendant to preserve his appellate rights. See part I D of this opinion.
 

 Webster's Third New International Dictionary defines an "inference" as "the act of passing from one or more propositions, statements, or judgments
 
 considered as true
 
 to another
 
 the truth of which
 
 is believed to follow from that of the former ...." (Emphasis added.) Webster's Third New International Dictionary (2002) p. 1158.
 

 See, e.g.,
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 500-501,
 
 10 A.3d 942
 
 (
 
 Katz
 
 ,
 
 J.
 
 , concurring); id., at 530-32,
 
 10 A.3d 942
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring); W. Horton & K. Bartschi, "2011 Appellate Review," 86 Conn. B.J. 1, 1-2 (2012) ; C. Ray & M. Weiner, "
 
 State
 
 v.
 
 Kitchens
 
 : The Decision Not To Decide," Connecticut Lawyer, March, 2011, p. 43.
 

 Although there are, no doubt, instances in which reliance on a legal fiction is necessary or appropriate, the court's unapologetic and inapt reliance on the concept in
 
 Kitchens
 
 calls to mind one well-known critique of legal fiction: "[Lawyers] feed [on] untruth, as [addicts] do [on] opium, at first from choice and with their eyes open, afterwards by habit, [until] at length they lose all shame, avow it for what it is, and swallow it with greediness, not bearing to be without it." (Internal quotation marks omitted.) L. Harmon, "Falling Off the Vine: Legal Fictions and the Doctrine of Substituted Judgment,"
 
 100 Yale L.J. 1
 
 , 3-4 (1990), quoting J. Bentham, A Comment on the Commentaries, in A Comment on the Commentaries and a Fragment on Government (1977) p. 59.
 

 I recognize that, following federal law, this court has evaluated implied waivers of a defendant's double jeopardy rights according to a different standard. See
 
 United States
 
 v.
 
 Dinitz
 
 ,
 
 424 U.S. 600
 
 , 609-10 n.11,
 
 96 S.Ct. 1075
 
 ,
 
 47 L.Ed.2d 267
 
 (1976) (double jeopardy waiver need not satisfy "knowing, intelligent, and voluntary standard," by which waivers of other constitutional rights are evaluated);
 
 State
 
 v.
 
 Chimenti
 
 ,
 
 115 Conn.App. 207
 
 , 230 n.19,
 
 972 A.2d 293
 
 (same), cert. denied,
 
 293 Conn. 909
 
 ,
 
 978 A.2d 1111
 
 (2009). Several rationales have been suggested for this age-old rule: it may be assumed that a criminal defendant will have full knowledge of any previous prosecutions for the same alleged offense; see
 
 White
 
 v.
 
 State
 
 ,
 
 23 Okla.Crim. 198
 
 , 204-205,
 
 214 P. 202
 
 (1923) ; double jeopardy rights are uniquely subject to abuse and gamesmanship; see
 
 Levin
 
 v.
 
 United States
 
 ,
 
 5 F.2d 598
 
 , 600-601 (9th Cir. 1925), cert. denied,
 
 269 U.S. 562
 
 ,
 
 46 S.Ct. 21
 
 ,
 
 70 L.Ed. 412
 
 (1925) ;
 
 Dalton
 
 v.
 
 People
 
 ,
 
 224 Ill. 333
 
 , 337-38,
 
 79 N.E. 669
 
 (1906) ;
 
 State
 
 v.
 
 White
 
 ,
 
 71 Kan. 356
 
 , 359-60,
 
 80 P. 589
 
 (1905) ; and the federal rules of criminal procedure, as well as the corresponding procedural rules of certain states, dictate that such claims are waived if not timely raised. See
 
 United States
 
 v.
 
 Herzog
 
 ,
 
 644 F.2d 713
 
 , 716 (8th Cir. 1981), cert. denied,
 
 451 U.S. 1018
 
 ,
 
 101 S.Ct. 3008
 
 ,
 
 69 L.Ed.2d 390
 
 (1981) ;
 
 Ex parte Hall
 
 ,
 
 94 N.J. Eq. 108
 
 , 119,
 
 118 A. 347
 
 (1922). None of those rationales applies to claims of instructional error, which, the state concedes, can be waived only on the basis of a knowing and voluntary decision.
 

 The majority contends that "[t]here is no such 'exchange' because waiver of the foregoing rights is within the complete control of the defendant." Footnote 15 of the majority opinion. This makes little sense. Setting aside the fact that the majority's conclusion does not flow from its premise-the blackjack player has complete control over the decision to split a pair or to double down, but there is no doubt that each involves an exchange-the majority's premise is plainly false. It will come as some news to criminal defendants, for example, that they are in complete control of the plea bargaining process.
 

 I do not foreclose the possibility that, in particular cases, counsel may waive this right in order to obtain a strategic benefit. As I discuss hereinafter, I agree that the right should be deemed waived in those cases in which such a strategic choice can clearly be established.
 

 The state concedes that, in a
 
 Kitchens
 
 situation, the trial court asks defense counsel to make a "binding judgment" as to whether to accept the proposed instructions.
 

 See part I D of this opinion.
 

 See footnote 3 of this opinion. Although the majority in
 
 Kitchens
 
 purported to maintain the well established distinction between forfeiture and waiver; see
 
 State
 
 v.
 
 Kitchens
 
 , supra, 299 Conn. at 474,
 
 10 A.3d 942
 
 ; as I previously have explained, the only reasonable reading of the
 
 Kitchens
 
 rule is that defense counsel, by failing to object following a review of the trial court's proposed jury instructions,
 
 forfeits
 
 the defendant's right to raise such challenges on appeal. See
 
 State
 
 v.
 
 Davis
 
 , supra, 311 Conn. at 499,
 
 88 A.3d 445
 
 (
 
 Palmer
 
 ,
 
 J.
 
 , concurring) (
 
 Kitchens
 
 is "a forfeiture case masquerading as a waiver case" [emphasis omitted] ). The majority refuses to admit this obvious fact only because it will not acknowledge that
 
 Kitchens
 
 degraded the constitutional protections long secured by our
 
 Golding
 
 jurisprudence.
 

 The fundamental flaw in the majority's reasoning is essentially the inverse of what philosophers have termed the " 'naturalistic fallacy' ";
 
 United States
 
 v.
 
 Chen
 
 ,
 
 257 F.Supp.2d 656
 
 , 663 n.26 (S.D.N.Y. 2003) ; or the mistake of assuming that because things
 
 are
 
 a certain way, they therefore
 
 should be
 
 that way. The majority makes the opposite mistake, imputing a waiver (descriptively) so as to obtain the procedural benefits of deeming an issue waived (normatively). To put it bluntly, the majority concludes that there
 
 is
 
 a waiver-a knowing, voluntary decision to relinquish the right to a properly instructed jury-for no reason other than that it
 
 wants
 
 there to be a waiver.
 

 See Judge Support Services, Superior Court Operations, Connecticut Judicial Branch Criminal Jury Instructions, available at http://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited October 11, 2016).
 

 The majority accurately notes that, in
 
 Pond
 
 , the state, in arguing unsuccessfully that Pond's claim was unreviewable, cited induced error rather than implied waiver. The reason that the state did not also contend that Pond's claim had been waived apparently was that the trial court in that case did not hold an
 
 on-the-record
 
 charging conference or provide counsel with an advance copy of the charge, and thus did not satisfy the
 
 Kitchens
 
 criteria for implied waiver.
 
 State
 
 v.
 
 Pond
 
 ,
 
 138 Conn.App. 228
 
 , 238 n.7,
 
 50 A.3d 950
 
 (2012), aff'd,
 
 315 Conn. 451
 
 ,
 
 108 A.3d 1083
 
 (2015) ; see id., at 237,
 
 50 A.3d 950
 
 . The takeaway is that, if the trial court had dotted all of its I's and crossed all of its T's, Pond's claim likely would have been held impliedly waived under
 
 Kitchens
 
 , resulting in injustice to him and depriving this court of an important opportunity to clarify and develop the law on criminal conspiracy. Put differently, it is only by reviewing the results of cases in which the defendant survived
 
 Kitchens
 
 that we can understand the important opportunities that are lost when the
 
 Kitchens
 
 rule is applied to bar appellate claims of instructional error.
 

 See
 
 State
 
 v.
 
 Johnson
 
 , supra, 316 Conn. at 48,
 
 111 A.3d 436
 
 ;
 
 State
 
 v.
 
 Devalda
 
 , supra, 306 Conn. at 505 n.15, 506,
 
 50 A.3d 882
 
 ;
 
 State
 
 v.
 
 Baptiste
 
 ,
 
 302 Conn. 46
 
 , 49, 58,
 
 23 A.3d 1233
 
 (2011) (rejecting state's argument that defendant waived instructional claim under
 
 Kitchens
 
 and remanding case to Appellate Court, which subsequently found instructional error in
 
 State
 
 v.
 
 Baptiste
 
 ,
 
 133 Conn.App. 614
 
 , 628,
 
 36 A.3d 697
 
 [2012], appeal dismissed,
 
 310 Conn. 790
 
 ,
 
 83 A.3d 591
 
 [2014] );
 
 State
 
 v.
 
 Brown
 
 ,
 
 299 Conn. 640
 
 , 659-60,
 
 11 A.3d 663
 
 (2011) ;
 
 State
 
 v.
 
 Opio
 

 -
 

 Oguta
 
 ,
 
 153 Conn.App. 107
 
 , 112 n.4, 114,
 
 100 A.3d 461
 
 , cert. denied,
 
 314 Conn. 945
 
 ,
 
 102 A.3d 1115
 
 (2014) ;
 
 State
 
 v.
 
 Ruocco
 
 ,
 
 151 Conn.App. 732
 
 , 742-44,
 
 95 A.3d 573
 
 (2014), aff'd,
 
 322 Conn. 796
 
 ,
 
 144 A.3d 354
 
 (2016) ;
 
 State
 
 v.
 
 Antonaras
 
 ,
 
 137 Conn.App. 703
 
 , 725-26 and n.16,
 
 49 A.3d 783
 
 , cert. denied,
 
 307 Conn. 936
 
 ,
 
 56 A.3d 716
 
 (2012) ; see also
 
 State
 
 v.
 
 Carrion
 
 , supra, at
 
 313 Conn. at 844-45, 848
 
 ,
 
 100 A.3d 361
 
 (declining to address claim that Appellate Court incorrectly concluded that defendant had waived claim regarding instructional impropriety because such impropriety was harmless in any event).
 

 I am not persuaded by the state's argument that, if these rationales were compelling, they also would require the review of unpreserved claims that a defendant truly waives or induces. The rationales that I have discussed for reviewing unpreserved challenges to a jury instruction in cases in which defense counsel merely acquiesces are either muted or trumped by distinct considerations of fairness and reliance in the context of waiver or induced error. See footnotes 10 and 11 and accompanying text of this opinion.
 

 See, e.g.,
 
 State
 
 v.
 
 Terry
 
 ,
 
 161 Conn.App. 797
 
 , 810-14,
 
 128 A.3d 958
 
 (2015) (five pages of waiver analysis), cert. denied,
 
 320 Conn. 916
 
 ,
 
 131 A.3d 751
 
 (2016) ;
 
 State
 
 v.
 
 Young
 
 ,
 
 161 Conn.App. 552
 
 , 556-63,
 
 129 A.3d 127
 
 (2015) (seven pages);
 
 State
 
 v.
 
 Bialowas
 
 ,
 
 160 Conn.App. 417
 
 , 426-30,
 
 125 A.3d 642
 
 (2015) (five pages);
 
 State
 
 v.
 
 Martone
 
 ,
 
 160 Conn.App. 315
 
 , 323-29,
 
 125 A.3d 590
 
 (six pages), cert. denied,
 
 320 Conn. 904
 
 ,
 
 127 A.3d 187
 
 (2015) ;
 
 State
 
 v.
 
 McClain
 
 ,
 
 154 Conn.App. 281
 
 , 289-93,
 
 105 A.3d 924
 
 (2014) (five pages), cert. granted,
 
 319 Conn. 902
 
 ,
 
 122 A.3d 637
 
 (2015) ;
 
 State
 
 v.
 
 Charles
 
 ,
 
 134 Conn.App. 242
 
 , 246-52,
 
 39 A.3d 750
 
 (six pages), cert. denied,
 
 304 Conn. 930
 
 ,
 
 42 A.3d 392
 
 (2012).
 

 See, e.g.,
 
 State
 
 v.
 
 Danforth
 
 ,
 
 315 Conn. 518
 
 , 537,
 
 108 A.3d 1060
 
 (2015) ;
 
 State
 
 v.
 
 Rabindranauth
 
 ,
 
 140 Conn.App. 122
 
 , 129-31,
 
 58 A.3d 361
 
 , cert. denied,
 
 308 Conn. 921
 
 ,
 
 62 A.3d 1134
 
 (2013) ;
 
 State
 
 v.
 
 Hines
 
 ,
 
 136 Conn.App. 412
 
 , 419-21,
 
 44 A.3d 886
 
 , cert. denied,
 
 307 Conn. 903
 
 ,
 
 53 A.3d 219
 
 (2012) ;
 
 State
 
 v.
 
 White
 
 ,
 
 127 Conn.App. 846
 
 , 856-58,
 
 17 A.3d 72
 
 , cert. denied,
 
 302 Conn. 911
 
 ,
 
 27 A.3d 371
 
 (2011) ; see also
 
 United States
 
 v.
 
 Hamilton
 
 ,
 
 499 F.3d 734
 
 , 736-37 (7th Cir. 2007) (declining to address waiver issue and proceeding not only to resolve merits of defendant's claim but also to clarify conflicting circuit precedent as to mens rea element of fraud in three paragraphs), cert. denied,
 
 552 U.S. 1129
 
 ,
 
 128 S.Ct. 951
 
 ,
 
 169 L.Ed.2d 782
 
 (2008) ;
 
 State
 
 v.
 
 Bonilla
 
 ,
 
 317 Conn. 758
 
 , 770 n.10,
 
 120 A.3d 481
 
 (2015) (declining to address "intricacies" of
 
 Kitchens
 
 issue because merits of defendant's claim could be readily resolved).
 

 Connecticut Criminal Defense Lawyers Association, which filed an amicus brief in
 
 State
 
 v.
 
 Herring
 
 , supra,
 
 323 Conn. at 526
 
 ,
 
 147 A.3d 653
 
 , a companion case, cites similar statistics suggesting that the number of unpreserved claims of instructional error resulting in reversal was even lower during the sixteen years following our decision in
 
 State
 
 v.
 
 Evans
 
 , supra,
 
 165 Conn. at 61
 
 ,
 
 327 A.2d 576
 
 , in 1973. During that period, our appellate courts found reversible error on the basis of unpreserved claims in only 3 percent of criminal appeals.
 
 State
 
 v.
 
 Golding
 
 , Conn. Supreme Court Records & Briefs, May Term, 1989, Defendant's Supplemental Brief p. 16.
 

 In the five years preceding our decision in
 
 Kitchens
 
 , for example, this court and the Appellate Court found harmless unpreserved instructional error in more than one dozen cases, including
 
 State
 
 v.
 
 Rodriguez
 

 -
 

 Roman
 
 ,
 
 297 Conn. 66
 
 , 87,
 
 3 A.3d 783
 
 (2010),
 
 State
 
 v.
 
 Hampton
 
 ,
 
 293 Conn. 435
 
 , 462,
 
 988 A.2d 167
 
 (2009),
 
 Small
 
 v.
 
 Commissioner of Correction
 
 ,
 
 286 Conn. 707
 
 , 731,
 
 946 A.2d 1203
 
 , cert. denied sub nom.
 
 Small
 
 v.
 
 Lantz
 
 ,
 
 555 U.S. 975
 
 ,
 
 129 S.Ct. 481
 
 ,
 
 172 L.Ed.2d 336
 
 (2008),
 
 State
 
 v.
 
 Thompson
 
 ,
 
 122 Conn.App. 20
 
 , 28,
 
 996 A.2d 1218
 
 (2010), aff'd,
 
 305 Conn. 806
 
 ,
 
 48 A.3d 640
 
 (2012),
 
 State
 
 v.
 
 Nance
 
 ,
 
 119 Conn.App. 392
 
 , 411, 413,
 
 987 A.2d 376
 
 , cert. denied,
 
 295 Conn. 924
 
 ,
 
 991 A.2d 569
 
 (2010),
 
 State
 
 v.
 
 Nelson
 
 ,
 
 118 Conn.App. 831
 
 , 856,
 
 986 A.2d 311
 
 , cert. denied,
 
 295 Conn. 911
 
 ,
 
 989 A.2d 1074
 
 (2010),
 
 State
 
 v.
 
 Fleming
 
 ,
 
 111 Conn.App. 337
 
 , 352-53, 356,
 
 958 A.2d 1271
 
 (2008), cert. denied,
 
 290 Conn. 903
 
 ,
 
 962 A.2d 794
 
 (2009),
 
 State
 
 v.
 
 Haywood
 
 ,
 
 109 Conn.App. 460
 
 , 471,
 
 952 A.2d 84
 
 , cert. denied,
 
 289 Conn. 928
 
 ,
 
 958 A.2d 161
 
 (2008),
 
 State
 
 v.
 
 Tok
 
 ,
 
 107 Conn.App. 241
 
 , 274,
 
 945 A.2d 558
 
 , cert. denied,
 
 287 Conn. 919
 
 ,
 
 951 A.2d 571
 
 (2008), and cert. denied sub nom.
 
 State
 
 v.
 
 Jourdain
 
 ,
 
 287 Conn. 920
 
 ,
 
 951 A.2d 570
 
 (2008),
 
 State
 
 v.
 
 Lawson
 
 ,
 
 99 Conn.App. 233
 
 , 245,
 
 913 A.2d 494
 
 , cert. denied,
 
 282 Conn. 901
 
 ,
 
 918 A.2d 888
 
 (2007),
 
 State
 
 v.
 
 Rivet
 
 ,
 
 99 Conn.App. 230
 
 , 233,
 
 912 A.2d 1103
 
 , cert. denied,
 
 281 Conn. 923
 
 ,
 
 918 A.2d 274
 
 (2007),
 
 State
 
 v.
 
 Youngs
 
 ,
 
 97 Conn.App. 348
 
 , 362,
 
 904 A.2d 1240
 
 , cert. denied,
 
 280 Conn. 930
 
 ,
 
 909 A.2d 959
 
 (2006), and
 
 State
 
 v.
 
 McArthur
 
 ,
 
 96 Conn.App. 155
 
 , 181-83,
 
 899 A.2d 691
 
 , cert. denied,
 
 280 Conn. 908
 
 ,
 
 907 A.2d 93
 
 (2006).
 

 It would be disturbing indeed if the majority, having rejected the "cynical" view that a state's attorney might allow an instructional error to go unnoticed in order to obtain a strategic advantage; footnote 18 of the majority opinion; were to adopt an equally cynical presumption regarding the conduct of defense counsel.
 

 If the majority is truly concerned that many unpreserved claims of instructional error are the result of secret strategic plans that are not apparent from the trial court record, then those concerns easily can be addressed simply by requiring that appeals alleging instructional error be accompanied by an affidavit by trial counsel stating that she was unaware of the alleged defects at the time of trial and that the defendant did not intend to waive any objections thereto. Cf. General Statutes § 52-190a (a) (attorney filing medical malpractice action must attach certificate stating that reasonable inquiry gave rise to good faith belief that grounds exist for action against each defendant). In the event that the state had cause to question the veracity of such a representation, the matter could be remanded to the trial court to make the necessary findings. See Practice Book § 60-2 (9) ; see also
 
 Henry
 
 v.
 
 Mississippi
 
 ,
 
 379 U.S. 443
 
 , 449-53,
 
 85 S.Ct. 564
 
 ,
 
 13 L.Ed.2d 408
 
 (1965). Such a procedure would allow any necessary factual determinations to be made by the court that tried the case, which is in the best position to assess whether the decisions of counsel were intentional and strategic, and dispense with the need for this court to engage in fact-finding functions for which it is ill-suited, or for a second, costly trial before a habeas court. And it would ensure that criminal defendants are not unfairly deprived of their constitutional right to a properly instructed jury solely on the basis of a presumption with little basis in reality regarding an error for which the defendant himself is almost certainly blameless. See
 
 State
 
 v.
 
 Hargrove
 
 ,
 
 48 Kan.App.2d 522
 
 , 551-53,
 
 293 P.3d 787
 
 (2013).
 

 It bears noting that, whereas the rules of practice governing jury trials expressly inform the defendant that he may be deemed to have waived the right to a jury trial if he fails to make a timely election; Practice Book § 42-1 ; there is no corresponding waiver provision in the rules governing jury instructions.
 

 It bears emphasizing in this respect that
 
 Golding
 
 itself was an instructional error case, and the
 
 Golding
 
 test clearly was intended from the outset to govern such claims. See
 
 State
 
 v.
 
 Golding
 
 , supra,
 
 213 Conn. at 235
 
 ,
 
 567 A.2d 823
 
 . Moreover, I am not persuaded by the state's argument that
 
 Golding
 
 predated the era of in-depth charging conferences and, therefore, did not account for the importance of encouraging full participation in such conferences by both parties. In fact, our cases from that time period reflect that we recognized both the existence and the importance of collaborative charging conferences but that we placed a higher priority on ensuring that unwaived constitutional violations did not go unaddressed. See, e.g.,
 
 State
 
 v.
 
 Sirimanochanh
 
 ,
 
 224 Conn. 656
 
 , 660-64,
 
 620 A.2d 761
 
 (1993) ;
 
 State
 
 v.
 
 Famiglietti
 
 ,
 
 219 Conn. 605
 
 , 618-19,
 
 595 A.2d 306
 
 (1991).
 

 See
 
 State
 
 v.
 
 Beebe
 
 ,
 
 131 Conn.App. 485
 
 , 492-93,
 
 27 A.3d 26
 
 (2011), cert. denied,
 
 303 Conn. 921
 
 ,
 
 34 A.3d 397
 
 (2012) ;
 
 State
 
 v.
 
 Brown
 
 ,
 
 131 Conn.App. 275
 
 , 282,
 
 26 A.3d 674
 
 (2011), aff'd,
 
 309 Conn. 469
 
 ,
 
 72 A.3d 48
 
 (2013) ;
 
 State
 
 v.
 
 Myers
 
 ,
 
 129 Conn.App. 499
 
 , 510,
 
 21 A.3d 499
 
 , cert. denied,
 
 302 Conn. 918
 
 ,
 
 27 A.3d 370
 
 (2011) ;
 
 State
 
 v.
 
 Bharrat
 
 ,
 
 129 Conn.App. 1
 
 , 18-19,
 
 20 A.3d 9
 
 , cert. denied,
 
 302 Conn. 905
 
 ,
 
 23 A.3d 1243
 
 (2011) ;
 
 State
 
 v.
 
 Lahai
 
 ,
 
 128 Conn.App. 448
 
 , 460,
 
 18 A.3d 630
 
 , cert. denied,
 
 301 Conn. 934
 
 ,
 
 23 A.3d 727
 
 (2011) ;
 
 State
 
 v.
 
 Carrion
 
 ,
 
 128 Conn.App. 46
 
 , 60,
 
 16 A.3d 1232
 
 (2011), aff'd,
 
 313 Conn. 823
 
 ,
 
 100 A.3d 361
 
 (2014).
 

 See
 
 Carrion
 
 v.
 
 Warden
 
 , Superior Court, judicial district of Tolland, Docket No. TSR-CV-11-4004163-S (December 15, 2015);
 
 Bharrat
 
 v.
 
 Commissioner of Correction
 
 , Superior Court, judicial district of Tolland, Docket No. TSR-CV-12-4004615-S (August 27, 2014), appeal dismissed,
 
 167 Conn.App. 158
 
 ,
 
 143 A.3d 1106
 
 (2016) ;
 
 Lahai
 
 v.
 
 Warden
 
 , Superior Court, judicial district of Tolland, Docket No. TSR-CV-09-4003028-S (May 7, 2012) ;
 
 Myers
 
 v.
 
 Warden
 
 , Superior Court, judicial district of Tolland, Docket No. TSR-CV-14-4005938-S (withdrawn August 12, 2016). I focus on cases decided in the immediate wake of the
 
 Kitchens
 
 decision because we will not know for some period of time whether more recently decided
 
 Kitchens
 
 cases ultimately will result in habeas challenges.
 

 The majority contends that, in
 
 Lahai
 
 , the Appellate Court "cited
 
 Kitchens
 
 only for its passing reference to the doctrine of induced error, and not for its clarification of the implied waiver rule." This is plainly false. Although it is true that the Appellate Court concluded that Lahai had induced the challenged error; see
 
 State
 
 v.
 
 Lahai
 
 , supra, 128 Conn. App. at 457,
 
 23 A.3d 727
 
 ; that court also expressly discussed
 
 Kitchens
 
 ' clarification of the implied waiver rule and independently found that the instructional challenge at issue was impliedly waived under
 
 Kitchens
 
 . Id., at 459-60,
 
 18 A.3d 630
 
 .
 

 Although I largely agree with the concurring opinion of Chief Justice Rogers, I do not share her view that "specific, on-the-record discussion of
 
 the particular instruction
 
 later claimed to be defective on appeal," followed by defense counsel's explicit assent to that instruction, is sufficient to establish waiver by implication of the defendant's constitutional right to a properly instructed jury. (Emphasis in original.) Text accompanying footnote 10 of Chief Justice Rogers' concurring opinion. As I explained in this opinion, I would find waiver only when the well established criteria for waiver are actually satisfied. Although I understand that certain federal courts follow an approach similar to that advocated by Chief Justice Rogers, I do not believe that approach ever has been the law of this state.